IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | Criminal No. 08-186-1 |
| | : | |
| BURNIE MAJEED | : | |

Legrome D. Davis, J.                                    August 4, 2009


MEMORANDUM

I.      Motion to Exclude Tax Evidence and Evidence of Straw Purchase

        A.      Background

        Defendant Majeed moves to exclude the Government's proposed evidence showing that

he did not file tax returns for the years 2001-2004 and 2006 and that he filed a tax return in 2005

reporting $53,452 of rental income.  Majeed also seeks to exclude the Government's proposed

evidence that, on June 30, 2006, Majeed purchased a home in Delaware for $468,190 in cash.

Majeed argues that the evidence should be excluded under Federal Rule of Evidence 404(b),

which limits the admission of relevant evidence that relates to other charged or uncharged

crimes, wrongs, or acts.  He also argues that the evidence is excludable under Federal Rule of

Evidence 403 because its probative value is outweighed by the danger of unfair prejudice.

        B.      Discussion

        Under governing precedent, "[i]n order to be admissible under [Federal Rule of

Evidence] 404(b), the evidence of other acts must: '(1) have a proper evidentiary purpose, (2) be

relevant under Rule 402, (3) satisfy Rule 403 (i.e., not be substantially more prejudicial than

probative), and (4) be accompanied by a limiting instruction, when requested pursuant to Federal Rule of Evidence 105, that instructs the jury not to use the evidence for an improper purpose.'" United States v. Kemp, 500 F.3d 257, 296 (3d Cir. 2007) (internal citations omitted).  Below we will address each of these issues as they pertain to the evidence related to the tax returns and the alleged straw purchase.

To show a proper evidentiary purpose, the Government must "'clearly articulate how that evidence fits into a chain of logical inferences' without adverting to a mere propensity to commit crime now based on the commission of crime then."  Id. (quoting United States v. Mastrangelo, 172 F.3d 288, 295 (3d Cir. 1999)).  Here the Government argues that the tax return evidence has a proper purpose because "[e]vidence that the defendants sustained themselves without a legitimate source of income is clearly relevant to" help establish that the "communications and concert of action" between the defendants were drug-related.  (Gov't's Mot. 11.)  The Third Circuit has held that "[i]n a narcotics prosecution, it is well established that the government may introduce evidence of cash purchases coupled with tax evidence tending to show that a defendant had no legitimate source of cash."  United States v. Chandler, 326 F.3d 210, 215 (3d Cir. 2003) (internal citations and quotation marks omitted).  Therefore, "to the extent that a defendant's failure to file tax returns evidences a lack of legitimate income, that evidence, in combination with evidence that the defendant possesses a significant sum of cash, generally is admissible in support of the government's contention that the defendant obtained the cash through the distribution of narcotics."  Id.

In the present case, in order to support its chain of logical inferences regarding the purpose of the tax evidence, the Government must establish that the amount of money in

Defendant's possession or the value of his purchases is inconsistent with his apparent lack of income.  Here, the Government's only mention of a purchase that they will seek to introduce for this purpose is the alleged purchase by Majeed of a Delaware home for $468,190 in cash on June 30, 2006, for which he allegedly used his girlfriend as a straw purchaser.  (Gov't's Mot. 6 n.2.)  Therefore, the tax evidence has a proper purpose only when coupled with the evidence of the cash purchase, which, as evidence of unexplained wealth, has a proper purpose to show possible involvement in illegal dealings.  See United States v. Cooley, 131 Fed. App'x 881, 883 (3d Cir. 2005) (finding that "[a] defendant's access to unexplained or unaccounted for wealth is strong circumstantial evidence of involvement in illegal activity"); see also United States v. Newton, 891 F.2d 944, 948 (1st Cir. 1989) (holding that "the possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking is generally relevant and admissible").

Under Federal Rule of Evidence 104(b):

> When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

Fed. R. Evid. 104(b).  The Supreme Court in Huddleston v. Unites States explained that, to determine whether conditionally relevant evidence can be admitted, "[t]he court simply examines all evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence."  485 U.S. 681, 690 (U.S. 1988).  Therefore, because the tax evidence is conditionally relevant and depends on the Government establishing that Majeed funded the straw purchase, the Government may only introduce the tax evidence at trial if, upon presentation of the straw purchase evidence, this Court concludes that a jury could reasonably find by a preponderance of the evidence that Majeed provided the funds

3

with which his girlfriend purchased the home.

The next requirement for the evidence to be admissible under Rule 404(b) is that the evidence be relevant under Rule 402.  Rule 402 states simply:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority.  Evidence which is not relevant is not admissible.

Fed. R. Evid. 402(b).  As we explained above, it is well recognized in this circuit that evidence of failure to file tax returns, when combined with evidence of unexplained wealth, is relevant to show that a defendant had no legitimate source of income.  See Chandler, 326 F.3d at 215.  In this case the evidence is clearly relevant because the fact that Majeed was allegedly able to purchase a home while apparently unemployed and having little reported income makes it more likely than not that he was receiving funds from an illicit source.  As such, the evidence meets the requirements of Rule 402.

To be admissible, the evidence must also meet the requirements of Federal Rule of Evidence 403.  Rule 403 states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.  Rule 403 "creates a presumption of admissibility."  United States v. Universal Rehabilitation Servs., 205 F.3d 657, 664 (3d Cir. 2000).  Therefore, "district courts may utilize the rule only rarely to cause the exclusion of evidence."  Id.  The Third Circuit Court of Appeals has explained that "if there is doubt about the existence of unfair prejudice . . . it is generally better practice to admit the evidence, taking necessary precautions by way of

4

contemporaneous instructions to the jury followed by additional admonitions in the charge."  Id. at 665.

The Third Circuit has emphasized that "[p]rejudice does not simply mean damage to the opponent's cause."  Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 670 (3d Cir. 2002).  "If it did, most relevant evidence would be deemed 'prejudicial.'"  Id.  Instead, the prejudice must be "of the sort which clouds impartial scrutiny and reasoned evaluation of the facts, which inhibits neutral application of principles of law to the facts as found."  Id.  The Advisory Committee notes accompanying Rule 403 explain that "[u]nfair prejudice . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  Fed. R. Evid. 403 advisory committee's note.  Unfairly prejudicial evidence is evidence that "'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish,' or otherwise 'may cause a jury to base its decision on something other than the established propositions in the case.'"  Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980).  Here, we find that evidence that Majeed purchased a four-hundred-thousand-dollar home for cash while having only $53,452 of reported legitimate income over the five preceding years is strongly probative. In a case such as this, where a large portion of the evidence consists of allegedly coded conversations, this evidence is particularly probative in that it provides a context for those conversations.  Because "[a] defendant's access to unexplained or unaccounted for wealth is strong circumstantial evidence of involvement in illegal activity," Cooley, 131 Fed. App'x at 883, Majeed bears a significant burden in establishing that the strong probative value of the evidence is "substantially outweighed" by the potential prejudice.  We find that the evidence that Majeed allegedly purchased a home although he had little reported income is not the type of

evidence that arouses the jury's "sense of horror" and "provokes its instinct to punish" or otherwise clouds impartial judgment to such an extent that the potential prejudice outweighs its significant probative value.  Therefore, especially in light of the safeguard that will be provided, upon request, by this Court's limiting instructions as explained below, we find that the evidence need not be excluded pursuant under Rule 403.

To safeguard against any potential prejudicial effect of the offered evidence, this Court will, upon request by Defendant, issue contemporaneous limiting instructions to the jury that will "provide a clear explanation regarding the balance between the evidence's prejudicial and probative effects."  United States v. Mastrangelo, 172 F.3d 288, 295 (3d Cir. 1999).  If limiting instructions are requested, this Court will carefully instruct the jury, immediately after the introduction of the evidence in question, that they may only consider the evidence for the narrow limited purpose for which it is being offered, namely to establish whether Majeed had a legitimate source of income.  As part of those instructions, the jury will be specifically cautioned that they may not consider the evidence as evidence of Majeed's propensity to commit any crime, evidence of his bad character, or evidence of anything other than whether he had a legitimate source of income.  These limiting instructions will again be repeated during the jury charge if so requested.  Furthermore, we invite Defendant Majeed to submit to this Court proposed limiting instructions concerning this issue.

C.     Conclusion

Based on the factors discussed above, we find that the evidence of Majeed's tax filings has a proper evidentiary purpose and that its strong relevance in this case is not substantially outweighed by any potential for prejudice.  However, as we emphasized above, the

Government's presentation of the tax evidence is conditioned upon this Court's finding, following the Government's presentation of the straw purchase evidence, that the jury could reasonably find by a preponderance of the evidence that Majeed provided the funds with which his girlfriend purchased the home.  Accordingly, we find that the evidence is conditionally admissible under Rule 404(b).  Furthermore, upon request, this Court will issue limiting instructions to the jury emphasizing that they may only consider the evidence for the narrow purpose of determining whether Majeed had a legitimate source of income.  Defendant shall submit any proposed limiting instructions on this issue on or before August 31, 2009.

II.     Motion to Admit Evidence of Prior Relationship of Conspirators and Cooperating
        Witnesses

        A.      Background

        The Government seeks to introduce evidence from three witnesses – Richard Pierce, Troy Cauthorn, and Donald Johnson – who will speak about their drug-trafficking relationship with Majeed.  It also seeks to introduce testimony regarding a conversation between Majeed and Cauthorn in which Majeed reacts to the shooting of their confederate, Jamille Barksdale.

        Richard Pierce's proposed testimony relates to the fact that Cauthorn and Majeed provided him cocaine to sell from 2002-2005.  According to Pierce, when he was released from prison in 2002, Cauthorn and Majeed began giving him cocaine to sale in quantities of five kilograms.  When the first supply took place, Pierce met with Cauthorn and Majeed to discuss whether and how he would sell the cocaine and at what price.  Pierce returned some of that initial supply due to bad quality and sold the rest.  Within a few weeks, Cauthron and Majeed

7

again delivered five kilograms of cocaine to Pierce.  From 2002-2005 Pierce would obtain cocaine from Cauthorn and Majeed separately in quantities of four and one half to nine ounces. On one occasion he obtained one kilogram of cocaine from Majeed at an Embassy Suites hotel complex.  He estimates that he obtained cocaine from Majeed on four or five occasions during this time.  Pierce also purchased cocaine from Barksdale, who told him that the cocaine came from Majeed.

Troy Cauthorn's proposed testimony relates to his relationship with Majeed beginning in the early 1990s.  According to Cauthorn, he and Majeed began selling cocaine in the early 1990s, when they dealt in smaller amounts.  When Cauthorn was released from prison in 2001, Majeed was Cauthorn's source of supply.  At first Majeed provided Cauthorn with qualities ranging from four and one half ounces to nine ounces.  Eventually Cauthorn began to receive one to two kilogram quantities of cocaine from Majeed.  Cauthorn became less of a worker and more of a partner to Majeed by developing his own network of distributors and seeking new sources of supply.  From 2002-2005, Cauthorn maintained a steady relationship with Majeed in the distribution of cocaine.  Cauthorn and Majeed pooled resources to provide Pierce with 5 kilograms of cocaine on two occasions on a consignment basis.  Cauthorn also knows that Majeed supplied Gandy and Barksdale with cocaine, partly from his familiarity with them prior to 2005.

Donald Johnson's proposed testimony relates to the structure of the organization.  He was incarcerated from 2003-2005.  Prior to his incarceration, Johnson knew Majeed and Cauthorn had a close relationship and believed that they were partners in the drug trade.  Johnson purchased cocaine from Cauthorn and knew from Barksdale that Majeed supplied cocaine to

Gandy and Barksdale.

In addition, during the hearing on pretrial motions held on February 9, 2009, the Government stated that they would likely seek to introduce evidence of a conversation in which Majeed and Cauthorn discuss the fact that Jamille Barksdale, another member of their drug-trafficking organization was shot the previous night.  (Mots. Hr'g Tr. 42:21-45:24, Feb. 9, 2009.) In that conversation, Majeed tells Cauthorn that he will go visit Barksdale at the hospital. Majeed also says: "Tell Banks[1] in my hood nig**r go nowhere without a gat.  Oh my God man, I just need to talk to y'all nig***s man . . . ."  (Wiretap Order 32-4 Extension 1 Aff. Log. 806.) During the conversation, Majeed refers to Barksdale as "my player."  (Id.)  In addition, Majeed states "Man I swear man.  I got crazy thoughts in my mind man.  I got crazy s**t in my mind man.  Gs I just gotta holler at everybody."  (Id.)  The troopers in the investigation interpreted this conversation as Majeed telling Cauthorn that he wanted all the members of their organization to be armed at all times and that he needed to talk about the members of the organization about this. (Id.)  The troopers also stated that they believed that Majeed's reference to "crazy thoughts" meant that he wanted to retaliate against the people who organized the shooting.  (Id.)

B.    Discussion

As we explained above, in order for the proposed evidence to be admissible under Rule 404(b) the evidence must: "(1) have a proper evidentiary purpose, (2) be relevant under Rule 402, (3) satisfy Rule 403 (i.e., not be substantially more prejudicial than probative), and (4) be accompanied by a limiting instruction, when requested pursuant to Federal Rule of Evidence 105, that instructs the jury not to use the evidence for an improper purpose.'"  United States v.

---

[1]        Banks is a nickname that the co-conspirators use for Barksdale.

<u>Kemp</u>, 500 F.3d 257, 296 (3d Cir. 2007) (internal citations omitted).

The proper evidentiary purpose the type of evidence proposed here is well recognized. First, we note that the Third Circuit Court of Appeals has stated that "Rule 404(b) evidence is especially probative when the charged offense involves a conspiracy" and that, "for this reason, the Government has broad latitude to use 'other acts' evidence to prove a conspiracy." <u>United States v. Cross</u>, 308 F.3d 308, 324 (3d Cir. 2002) (internal citations omitted). More specifically, the Third Circuit Court of Appeals has found that evidence that goes to the relationship between a co-conspirator and the defendant has a proper evidentiary purpose. In <u>United States v. Simmons</u> the Third Circuit Court of Appeals upheld the district court's decision to admit evidence of prior bad crimes through the testimony of a co-conspirator. In that case, the crime charged was a conspiracy to cash forged checks. A co-conspirator testified that he and the defendant had been involved in check forging long before the time encompassed by the charged conspiracy. In finding that there was no clear error in the trial court's decision to admit the testimony, the Court of Appeals found that the evidence "could be considered as relevant to provide necessary background information, to show an ongoing relationship between [the witness and the defendant], and to help the jury understand [the co-defendant's] role in the scheme." <u>United States v. Simmons</u>, 679 F.2d 1042, 1050 (3d Cir. 1982) (followed by <u>United States v. Butch</u>, 256 F.3d 171, 176 (3d Cir. 2001)).

Other circuits have similarly recognized the proper purpose of evidence of other crimes that shows the relationship between co-conspirators. The First Circuit Court of Appeals has specifically found that in "a conspiracy case, evidence of other bad acts, subject always to the requirements of Rule 403, can be admitted to explain the background, formation, and

development of the illegal relationship . . . and, more specifically, to help the jury understand the

basis for the co-conspirators' relationship of mutual trust."  United States v. Escobar-de Jesus,

187 F.3d 148, 169 (1st Cir. 1999) (cited with approval by Cross, 308 F.3d at 324).  In Escobar-de

Jesus the court permitted the introduction of the testimony of a co-defendant as to an incident not

charged in the indictment in which the defendant had purchased $90,000 worth of heroine from

her.  The defense argued that the sale was outside of the scope of the indictment and that it was

being offered solely to show that the defendant has a propensity to commit drug crimes.  The

court disagreed, finding that the testimony's probative value was not outweighed by the potential

for prejudice because the testimony "was critical to set the stage for the rest of [the co-

defendant's] testimony concerning the formation, nature, and extent of her conspiratorial

relationship with [the defendant], and it represented only a tiny fraction of the incriminating

evidence presented to the jury during the course of the trial."  Id. at 170.  The D.C. Court of

Appeals has similarly found that "[i]n a conspiracy prosecution, the government is usually

allowed considerable leeway in offering evidence of other offenses 'to inform the jury of the

background of the conspiracy charged, to complete the story of the crimes charged, and to help

explain to the jury how the illegal relationship between the participants in the crime developed.'"

United States v. Mathis, 216 F.3d 18, 26 (D.C. Cir. 2000) (cited with approval by Cross, 308

F.3d at 324).

　　　　Similarly, here we find that the proposed testimony has a proper evidentiary purpose.

The testimony of Cauthorn is very relevant to show the long-standing nature of the relationship

between him and Majeed.  In particular, the evidence provides background information

regarding how the partnership relationship evolved between him and Majeed, which will in turn

11

help the jury understand Cauthorn's role in Majeed's drug-trafficking organization.  Similarly, the testimony of Pierce helps explain to the jury how his relationship with Cauthorn and Majeed developed and helps to set the context for his role as a distributor for the organization.  In addition, Pierce's testimony helps to show the nature of the partnership relationship between Majeed and Cauthorn.  Johnson's testimony helps to put in context the compartmentalized nature of the organization as well as Majeed's drug relationship with Gandy.  Finally, the evidence regarding Majeed's reaction to the Barksdale shooting shows that Cauthorn, Barksdale and Majeed are members of a cohesive organization.  It also shows Majeed's leadership relationship with the others in that he appears to see it as his responsibility to talk with the other members about ensuring their safety by being armed at all times.

We find that the proposed evidence from Cauthorn's, Pierce's and Johnson's testimony as well as from the telephone call between Cauthorn and Majeed is relevant under Rule 402 because it is "critical to set the stage for the rest of [the co-conspirators'] testimony concerning the formation, nature, and extent of [their] conspiratorial relationship with [Majeed], and it represent[s] only a tiny fraction of the incriminating evidence [that will be] presented to the jury during the course of the trial."  Escobar-de Jesus, 187 F.3d at 169.  This context-setting evidence is particularly helpful in light of the organizations' sophisticated nature and secrecy.  Therefore, due to the highly probative value of the evidence, and in light of the Government's "broad latitude to use 'other acts' evidence to prove a conspiracy," Cross, 308 F.3d at 324, we find that, when analyzed through the balancing test outline by Rule 403, the potential for prejudice resulting from this evidence does not substantially outweigh its probative value.

Finally, as in the case of the tax evidence discussed above, upon request by Defendant,

this Court will issue contemporaneous limiting instructions to the jury not to use the co-conspirator's testimony or the evidence of the conversation between Majeed and Cauthorn for an improper purpose.  If limiting instructions are requested, this Court will carefully instruct the jury that they may only consider the subject evidence for the narrow limited purpose for which it is being offered, namely to explain the relationships between the members of the organization and to help the jury understand different participants' roles in the conspiracy.  As part of those instructions, the jury will be specifically warned that they may not consider the evidence as evidence of Majeed's or Gandy's propensity to commit any crime or as evidence of bad character.  We again invite Defendants to submit to this Court proposed limiting instructions concerning this issue.

C.    Conclusion

For the reasons stated above, we find that the proposed evidence concerning the relationship between the co-conspirators is admissible under Rule 404(b).  An appropriate Order follows.