IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| vs. | : | Criminal No. 08-186 |
| | : | |
| BURNIE MAJEED | : | |
| KELVIN GANDY | : | |

Legrome D. Davis, J.                                      August 4, 2009

## MEMORANDUM

I.      FACTUAL BACKGROUND & PROCEDURAL HISTORY

        This matter concerns the criminal prosecution of Defendants Burnie Majeed and Kelvin

Gandy for charges related to an alleged drug conspiracy.  On April 1, 2008, Defendants Majeed

and Gandy, along with Jamille Barksdale and Troy Cauthorn, were charged in an indictment

with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and

distribution of controlled substances in violation of 21 U.S.C. § 841(a)(1).  The indictment

asserts that, from at least January 2005 to December 2006, the defendants conspired to distribute

a quantity of cocaine in excess of five kilograms in the city of Philadelphia, the city of Chester,

the state of New Jersey, and the state of Delaware.

        The investigation of the alleged conspiracy involved, among other things, the use of

electronic wiretaps on many of the suspects' cellular telephones and on two vehicles.  In addition

to authorizing the surveillance of telephones belonging to Majeed, Gandy, Barksdale and

Cauthorn, the wiretaps also authorized the surveillance of telephones belonging to Donald

Johnson and Edward Kaplan, two of Defendants' alleged co-conspirators.

        Defendants have moved in limine to suppress the evidence obtained from the wiretap

1

warrants on several different grounds.  Majeed asserts that Judge Seamus McCaffery, the judge who authorized each of the warrants, did not have authority to do so under the federal wiretap interception statute, 18 U.S.C. §§ 2510-2520, Title III, Omnibus Crime Control and Safe Streets Act of 1968 ("Title III").  In addition, Majeed and Gandy both argue that the warrants are invalid because they do not show the necessity for a wiretap as required by Title III.  Both Defendants also assert that the wiretap warrants are not supported by the requisite probable cause.  They specifically focus their challenge on the alleged lack of probable cause for the first warrant issued in this case, Warrant 32-1 (2005), which was issued for the telephone of Donald Johnson, one of Defendants' alleged co-conspirators.  Furthermore, Gandy specifically challenges the adequacy of the wiretap warrant authorizing the installation of hidden microphones in a Kia Sportage vehicle used by the alleged conspirators at one point during the investigation.  Gandy asserts that the warrant lacked a showing of probable cause to believe that pertinent conversations would be obtained through those microphones and that the warrant did not meet the necessity requirement of Title III because it failed to mention that Richard Pierce, a person who allegedly conducted drug-related transactions with members of the organization, was cooperating with the police at the time the warrant was issued.

Additional questions regarding the warrants arose after this Court reviewed the warrant applications and noted that there appeared to be an error in two of the warrant extension applications 32-2 (2006) Extension 3 and 32-3 (2006) Extension 2 and 3.  Both warrants authorized the interception of Majeed's telephone numbers.  Warrant 32-2 authorized the interception of 267-918-9515 and Warrant 32-3 authorized the interception of 267-304-5325.  However, the applications contained a large number of identical call logs, beginning with those

obtained on February 15, 2006, to support the interception of the two separate numbers.  The call

logs did not specifically label the telephone number on which the calls were captured.  This was

problematic because each call could only have been obtained from one of the numbers and could

therefore only support probable cause for the interception of one of the numbers.  Following that

discovery, this Court ordered the Government and Defendants to submit briefing regarding the

effect of the apparent inconsistency on all of the warrants and other evidence at issue in this case.

Defendants have since moved to suppress all evidence obtained through the mentioned warrant

extensions and through any warrants and extensions issued as a result of applications that relied

on those extensions.

Below we will analyze the validity of each one of the wiretap warrants on which the

Government has indicated it plans to rely.[1]  In Section III(A), we will begin by exploring issues

and evidence that are common to all of the warrants.  In Section III(B), we will turn to a warrant-

by-warrant analysis.  As part of that analysis, we will explore the issues presented by Warrant

32-2 (2006) Extension 3 and Warrant 32-3 (2006) Extensions 2 and 3.

II.     LEGAL STANDARD

A.     Requirements of Title III

Title III requires that an application for a wiretap show that:

> (a) there is probable cause for belief that an individual is committing,
> has committed, or is about to commit a particular offense enumerated
> in section 2516 of this chapter [18 U.S.C. § 2516];
> (b) there is probable cause for belief that particular communications
> concerning that offense will be obtained through such interception .

---

[1]     We will analyze each of the wiretap applications that the Government addressed
in its January 27, 2009 Response to Defendants' Pretrial Motions and in its April 3, 2009
Supplemental Response to Defendants' Pretrial Motions.

.

> (d) . . . there is probable cause for belief that the facilities from
> which, or the place where, the wire, oral, or electronic
> communications are to be intercepted are being used, or are about to
> be used, in connection with the commission of such offense, or are
> leased to, listed in the name of, or commonly used by such person.

18 U.S.C. § 2518(3).  In addition, Title III requires that the application show that "normal

investigative procedures have been tried and have failed or reasonably appear to be unlikely to

succeed if tried or to be too dangerous."  18 U.S.C. § 2518(3)(c).[2]

An application for probable cause to issue a wiretap warrant "must be supported by the

same probable cause necessary for a search warrant."  United States v. Nixon, 918 F.2d 895, 900

(11th Cir. 1990) (citing United States v. Hyde, 574 F.2d 856, 862 (5th Cir.1978)).  The Third

Circuit has rejected the argument that wiretap applications must be supported by a higher degree

of probable cause than search warrants applications explaining that "[p]robable cause is not a

matter of degree."  United States v. Falcone, 505 F.2d 478, 481 (3d Cir. 1974) (overruled on

other grounds by United States v. Ojeda Rios, 495 U.S. 257, 265 (U.S. 1990)).  The Court has

further noted that "no special probable cause requirement can be found in the statutory scheme"

and that "[c]ertainly if a higher degree of probable cause were intended, Congress would have so

stated."  Id.

Therefore, a judge authorizing a wiretap warrant has the traditional task of "mak[ing] a

'practical, common-sense decision' about whether the 'totality of the circumstances' indicate

that there is probable cause that the sought-for evidence will be obtained."  Nixon, 918 F.2d at

900 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)).  In reviewing the authorization, our role

---

[2]     Throughout this document we will refer to this requirement as the "necessity
requirement."

is to "ensure that the magistrate had a 'substantial basis for . . . concluding' that probable cause existed." Id. (citing Gates, 462 U.S. at 238-39).  Furthermore, as the Third Circuit has explained:

> A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'. . .'A grudging or negative attitude by reviewing courts toward warrants,' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than a commonsense, manner.'

United States v. Ritter, 416 F.3d 256, 264 (3d Cir. 2005).

      B.     Relying on Affiants' Interpretations

 In determining whether the warrant applications meet Title III's requirements, we "may properly take into account affirmations which are founded in part upon the experience of specially trained agents."  United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997) (citations omitted).  In this case, the warrant and extension applications contain the affiants' interpretations of many cryptic and coded conversations among the suspected conspirators.  These interpretations are supported by the affiants' training and experience regarding "the methods, devices, and modus operandi" of drug traffickers as well as the "language, code numbers, code words and slang terms used to refer to controlled substances."  (Warrant 32-1 (2005) pp. 2-3.) Courts have specifically found that troopers' interpretations of coded conversations can support probable cause in obtaining a warrant.  See United States v. Beltran, 11 Fed. App'x 786, 787 (9th Cir. 2001) ("We see no reason why the district court could not rely on [the agent's] interpretations [of intercepted conversations] to find probable cause."); United States v. Carr, No. 07-40034, 2007 U.S. Dist. LEXIS 56149, at *10 (D. Kan. July 31, 2007) (finding that "cryptic or coded conversations can support a finding of probable cause"); United States v.

Feola, 651 F. Supp. 1068, 1096 (S.D.N.Y. 1987) (holding that the agents' interpretations "properly contributed to a finding of probable cause").  Accordingly, in assessing the sufficiency of the evidence contained in the warrant and extension applications, we rely on the affiants' interpretations of cryptic and coded language contained in the calls.

III.    DISCUSSION

     A.    Common Issues

          1.    <u>Issuing Judge's Authority under Title III</u>

Majeed claims that the wiretap orders are unlawful because the issuing judge was not a judge of competent jurisdiction under Title III.  Title III states that a state judge is a judge of competent jurisdiction if he is a "judge of general criminal jurisdiction of a State who is authorized by a statute of that State to enter orders authorizing interception of wire, oral, or electronic communications."  18 U.S.C. § 2510.  The issuing judge for each of the warrants was Pennsylvania Supreme Court Justice Seamus McCaffery, who was a Judge on the Pennsylvania Superior Court at the time of the warrant authorizations.  Contrary to Majeed's assertions, the Pennsylvania Superior Court is indeed a court of general jurisdiction.  See <u>Newman v. Thorn</u>, 518 A.2d 1231, 1235 (Pa. Super. Ct. 1986) (describing the Superior Court as "the court of general appellate jurisdiction" and stating that it "exercises a general jurisdiction over all appeals from common pleas 'regardless of the nature of the controversy'").  Furthermore, Pennsylvania's wiretap statute, the Pennsylvania Wiretapping and Electronic Surveillance Control Act, specifically vests on Superior Court judges the exclusive authority to issue wiretaps orders under that act.  18 Pa. Cons. Stat. Ann. § 2510.  Accordingly, we find that, at the relevant time the issuing judge was a judge of competent jurisdiction under the meaning of Title III.

2.      Necessity Requirement

Defendants assert that the wiretap applications did not comply with the requirements of Title III because they failed to show that "normal investigative procedures with respect to the offense were tried and failed or reasonably appear to have been unlikely to succeed if tried or are too dangerous to employ." (Gandy's Mot. Suppress ¶ 27); see 18 U.S.C. § 2518(3)(c). Courts have consistently held that "18 U.S.C. § 2518(3)(c) does not require the government to exhaust all other investigative procedures before resorting to electronic surveillance." United States v. Williams, 124 F.3d 411, 418 (3d Cir. 1997). Instead "[t]he government need only lay a 'factual predicate' sufficient to inform the judge why other methods of investigation are not sufficient." Id. The Third Circuit Court of Appeals has highlighted that, in determining whether the government has established that factual predicate, "[t]he government's showing is to be 'tested in a practical and commonsense fashion.'" Id.

Although each affidavit asserts specific facts relevant to establishing the necessity requirement of Title III, there are several issues pertaining to necessity that are applicable to all of the warrants. The affidavits detail the other types of investigative tools in this type of criminal investigation and discusses in detail why those methods would not be sufficient. (See, e.g., Warrant 32-1 (2005) 77-81). The methods discussed include: (1) the use of confidential informants, (2) the use of undercover agents, (3) the use of visual physical surveillance, 4) the execution of search warrants, (5) the use of a grand jury, and (6) the use of a pen register/trap and trace device on telephones.

The affidavits explain that the use of confidential informants and undercover agents would not have been sufficient to investigate the drug-trafficking organizations because the

troopers believed, based on their training and experience, that the suspects would be unwilling to introduce any potential buyers to their suppliers or co-conspirators and thereby run the risk of cutting themselves out of the profit chain.  (See, e.g., id. at 77-78.)  The affidavits also explain that the troopers had already been using confidential informants prior to beginning wiretap surveillance and that the practice had not resulted in introductions to any of the suspects' suppliers.  (See, e.g., id. at 78.)  The affiants further state that it would be very dangerous for a confidential informant to try to push the suspects to introduce him to his suppliers.  (See, e.g., id.)

The affidavits also explain that physical surveillance would not be sufficient in this case because, due to the suspects' sophistication as drug dealers and the close-knit nature of the community where they operate, surveillance would likely be detected.  (See, e.g., id. at 78-79.) The agents highlighted that, on prior occasions during the investigation, the suspects had spotted surveillance vehicles and had taken actions to defeat surveillance.  (See, e.g., id. at 79.)  The agents also indicated that members of the Chester community are easily able to identify outsiders and habitually confront the agents or alert other members of the community when law enforcement vehicles are spotted.  (See, e.g., id.)  For these reasons, the officers believed that surveillance on its own would not provide sufficient information for a successful investigation of the suspects' drug trafficking organization.

The affidavits next explain that search warrants would not be sufficient because the suspects were likely to have several stash houses that could not be easily identified by the officers.  (See, e.g., id. at 79-80.)  In addition, the search warrants would not be likely to provide sufficient information about the suspects' confederates or the activities of the organization as a

8

whole.  (See, e.g., id. at 79.)  Also, conducting the search warrants early in the investigation would alert other members of the organization about the investigation, which would make them much more likely to destroy evidence and take steps to evade the police.  (See, e.g., id. at 80.)

Similarly, the affiants assert the issuance of subpoena for a grand jury would also alert the suspects' confederates that there was an ongoing investigation, which would likely lead to the destruction of evidence and would make it much more difficult to investigate the organization.  (See, e.g., id. at 81.)  They also highlight that the grand jury process would likely put the individuals who had been cooperating with the investigation at risk of being discovered. (See, e.g., id.)

Finally the affidavits explain that the use of a pen register on the suspects' telephones would not be sufficient because many drug dealers use pre-paid telephones or telephones that are registered in the names of other people, making it difficult to accurately determine the identity of the individuals that are in contact with the suspects.  (See, e.g., id. at 80.)

As the Third Circuit has explained, "[a]lthough the government has actual knowledge of a conspiracy and evidence sufficient to prosecute one of the conspirators, it is unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network is uncovered and the identity of its participants learned."  United States v. Armocida, 515 F.2d 29, 38 (3d Cir. 1975).  We find that these common factors mentioned in each of the wiretap orders, in addition to the other individual factor mentioned therein, support a finding of necessity for the wiretap orders.

B.     Individual Warrants

1.     Warrant 32-1 (2005), August 31, 2005 - Barksdale

Warrant 32-1 (2005) was authorized on August 31, 2005 for the interception of

Barksdale's telephone number 267-292-3401.  The affidavit asserts sufficient facts, including

those explained above, to fulfill the necessity requirement of Title III.  (Aff. 77-81).  In addition,

the affidavit contains ample evidence to support the findings of probable cause required by Title

III, 18 U.S.C. § 2518(3).

The affidavit details extensive information obtained from four confidential informants

regarding the drug-trafficking activities of Barksdale, Majeed, and Cauthorn.  Each of the four

confidential informants mentioned in the affidavit had previously provided information

regarding drug-traffickers to the police.  The police had corroborated that information through

other sources and independent investigation and had found that information to be reliable.  The

officers that interviewed these confidential informants found them to have been consistently

truthful in the past.  Furthermore, the information provided by the informants regarding

Barksdale's status as a drug-trafficker were later corroborated through three controlled purchases

and surveillance as detailed below.  In addition, each of the confidential informants had

previously provided reliable information to the police and had been found to be truthful.  Each of

the informants has personally observed or interacted with one or more of the suspected co-

conspirators as they took part in drug-related activities.  As the Third Circuit Court of Appeals

has explained, "[i]n evaluating the worth of an informant's report, we employ a 'totality of the

circumstances' approach, considering, among other factors, the informant's veracity, reliability,

and basis of knowledge."  United States v. Holmes, 69 Fed. App'x 66, 68-69 (3d Cir. 2003)

(citing Illinois v. Gates, 462 U.S. 213, 230 (U.S. 1983)).  We find that, based on the totality of

the circumstances, the information from the confidential informants was an adequate basis to

support a finding of probable cause.

The confidential informant referred to in the affidavit as CI-1 stated during his January 2005 interview that he had purchased large amounts of cocaine from Barksdale in the past and that Barksdale utilized his cellular telephone to arrange drug transactions.  (Aff. 8.)  He also stated that he knew that within six months prior to January 2005 Barksdale had purchased approximately $140,000 of cocaine from Majeed and Cauthorn every two to three weeks.  (Id. at 9.)  He also related that, in January 2005, he observed Barksdale taking part in what CI-1 believed to be a drug transaction.  (Id. at 8.)  CI-1 also indicated that he knows that Cauthorn supplies drugs to other traffickers in the city of Chester.  (Id. at 9.)

The confidential informant referred to in the affidavits as CI-2 stated during his April 2005 interview that, in the preceding few months, he had seen Majeed in the possession of large amounts of cocaine and had seen him conduct sales of large amounts of cocaine.  (Id. at 11.)  The confidential informant referred to in the affidavits as CI-3 stated that in the early 1990s he had seen Cauthorn sell one kilogram of cocaine to another drug dealer.  (Id. at 12.)  He further stated that approximately three to four years before the date of the interview he had purchased large amounts of cocaine from Barksdale.  (Id.)  He also stated that, on one occasion, he placed an order for cocaine with Barksdale and then saw Barksdale meet with Majeed before filling CI-3's order.  (Id.)  The confidential informant referred to in the affidavits as CI-4 stated, in part, that he has recently seen Majeed and Cauthorn in the possession of what he believed to be more than $100,000.  (Id. at 54.)  He also stated that, in previous years, he had personally made direct

11

purchases of cocaine from Barksdale, Majeed, and Cauthorn.[3]  (Id.)

Majeed argues that the evidence provided in the supporting affidavit was stale.  In particular, Majeed asserts that "[t]he time frame provided by each of the confidential informants regarding the alleged criminal conduct of Jamille Barksdale and others is not close enough in time . . . [t]o support probable cause for the issuance of the August 31, 2005 wiretap."  (Majeed's 1st Supp. Mot. To Suppress 13-19.)  We disagree.  The Third Circuit Court of Appeals has explained that "where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the passage of time between the occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance."  United States v. Urban, 404 F.3d 754, 774 (3d Cir. 2005).  The Court has further specified that "[t]he liberal examination given staleness in a protracted criminal conduct case 'is even more defensible in wiretap cases than in ordinary warrant cases, since no tangible objects which can be quickly carried off are sought.'"  Id. at 775.  In the present case, there are numerous factors that indicate a pattern of ongoing criminal activity.  For example, CI-1 related to the police that he had purchased drugs from Barksdale a few months prior to January 2005.  (Id. at 7-8.)  He also stated that he witnessed Barksdale taking part in what CI-1 believed to be a drug transaction in January 2005.  (Id. at 8.)  CI-1 further indicated that he knew that, within six months prior to January 2005, Barksdale was paying Cauthorn and Majeed $140,000 every two to three weeks for cocaine.  (Id. at 9.)  CI-3 and CI-4 both stated that they had purchased cocaine from Barksdale in

---

[3]      Although the information provided by CI-2 and CI-4 was provided directly to Officer Tyler and not to one of the affiants, it is well settled that "where law enforcement officers are cooperating in an investigation . . . the knowledge of one is presumed shared by all." Illinois v. Andreas, 463 U.S. 765, 772 n.5 (1983).

previous years.  Based on the totality of the evidence provided, we find that the confidential informant evidence supporting the issuance of the wiretap order was not stale.

In addition to the details provided by the confidential informants, the affidavit presented evidence of several controlled purchases during which CI-1 obtained cocaine from Barksdale. The purchases took place on January 11, 2005, April 13, 2005, and June 15, 2005.  (Id. at 22-25; 43-46.)  On each occasion, CI-1 contacted Barksdale using Barksdale cellular telephone number. (Id. at 22-25; 43-46.)  During the last transaction, he contacted Barksdale using the cellular telephone number that was the subject of the August 31, 2005 wiretap.  (Id. at 22-25; 43-46.)

The affidavit also reported on the extensive drug-related criminal histories of Barksdale, Cauthorn and Majeed.  (Id. at 12-19.)  Such criminal records are relevant to a determination of probable cause.  See United States v. Wagner, 989 F.2d 69, 73 (2d Cir. 1993).  The affidavit further reported that a pen register placed on Barksdale's original phone revealed that he received an inordinate amount of phone calls.  (Id. at 69.)  In addition, the pen register showed that following the controlled purchase conducted in April of 2005, during which Barksdale suspected that he was under surveillance, Barksdale discontinued utilizing the phone.  (Id. at 29-30.)  It also showed that Barksdale was in contact with someone utilizing two telephone numbers that were registered in the name of Geraldine Majeed, Majeed's mother.  (Id. at 71.)

Finally, the affidavit indicates that toll records showed that the telephone number that was subject to the wiretap, 267-972-3401, was subscribed to Jamille Barksdale.  (Aff. 42.)  It also states that, after Barksdale discontinued using his original telephone following the April 2005 controlled buy, he provided CI-1 with the telephone number 267-972-3401 as his new telephone number.

The above-mentioned evidence provides sufficient probable cause to find that (1) Barksdale was involved in drug-trafficking activities; (2) a wiretap of the targeted telephone number was likely to yield conversations between Barksdale and the people with whom he engaged in drug-trafficking activities; and (3) Barksdale utilized the targeted telephone number, which was subscribed in his name, to engage in drug-trafficking.  Accordingly, we find that the affidavit provided sufficient probable cause to support the issuance of the August 31, 2005 wiretap order.

       2.      Warrant 32-4 (2005), December 19, 2005 - Cauthorn

On December 19, 2005, a wiretap warrant was issued for Troy Cauthorn's cellular telephone number 215-360-9729.  For the reasons stated below, we find that the affidavit accompanying the wiretap application complies with the requirements of Title III.

First, the affidavit shows necessity because it provides a sufficient factual background to show that other traditional methods of investigation would not be sufficient in this case.  (Aff. 86-92.)  Secondly, the affidavit provides ample probable cause to support the wiretap.  The affidavit details the information provided by the confidential informants described above who indicated that Cauthorn had been a drug-trafficker for several years.  (Aff. 12-14.)  In addition, the affidavit provides evidence derived from a combination of electronic surveillance, physical surveillance, and the expert interpretation of the investigating officers indicating that Cauthorn received drugs from a person named Styles Beckles on December 11, 2005.  (Aff. 49-54.)  Furthermore, the affidavit indicates that Cauthorn remained in contact with Beckles regarding

the payment for that drug delivery as late as December 17, 2005.  (Aff. 76 Log 302.)[4]  The affidavit also showed that Cauthorn communicated with Beckles using the targeted telephone number 215-360-9729.  (Id.)  Therefore we find that the affidavit provides sufficient probable cause that: (1) Cauthorn was involved in drug-trafficking; (2) Cauthorn utilized the targeted telephone number to conduct drug-trafficking activities; (3) a wiretap of the targeted telephone number was likely to yield conversations regarding drug-trafficking.  Accordingly, we find that the wiretap order was lawfully issued.

Extension 1 for Warrant 32-4 (2005) was issued on January 27, 2006.  The affidavit supporting the application showed, for example, that on January 14, 2006, Cauthorn spoke with Majeed on the targeted telephone and Majeed told him, in coded language, that he just learned that he would be receiving cocaine from one of his sources.  (Aff. 2173-74 Log 84.)[5]  It also shows that on January 15, 2006, Cauthorn spoke with Majeed to ask him whether the supply of cocaine was ready.  (Id. at 002180-81 Log 187.)  The affidavit also shows that, on January 16, 2006, Cauthorn spoke with Majeed on the targeted telephone and told him that he had to sell his current cocaine supply to which Majeed responded "that [is] gonna go fast though."  (Id. at 002184, Log 222.)

Extension 2 to Warrant 32-4 (2005) was authorized on February 15, 2006.  The

---

[4]  As we explained above, the majority of the conversations captured through the wiretaps utilize cryptic and coded language.  In the affidavits supporting the warrants, the affiants interpreted the relevant language based on their expertise and experience.  We rely on the affiants' expert interpretations of the calls in assessing the sufficiency of probable cause for each application.

[5]  This particular affidavit does not include page numbers.  Therefore, we will refer to the relevant pages using the code located at the lower right-hand side of each page on the affidavit.

supporting affidavit shows that, on February 2, 2006, Cauthorn spoke to one of his customers and told him that he had cocaine for him earlier but that he had since run out.  (Aff. 2754-55 Log 1342.)  It also shows that, on February 8, 2006, Cauthorn spoke with Barksdale and asked him whether he wanted to purchase cocaine.  (Id. at 2755-56 Log 1345.)  Later that same day, Cauthorn spoke with an unidentified customer to negotiate a price of cocaine.  (Id. at 2757-58 Log 1351.)

Extension 3 to Warrant 32-4 (2005) was authorized on March 13, 2006.  The supporting affidavit shows that, on February 24, 2006, Cauthorn spoke with Barksdale about the size of a cocaine supply.  (Aff. 311-12 Log 2271.)  It also shows that, on February 25, 2006, Cauthorn spoke with Majeed who told him that he had detected surveillance vehicles and that they should be careful.  (Aff. 316-18 Log 2343.)  In addition, it shows that, on March 1, 2006, Cauthorn spoke with an unidentified male about the price of cocaine.  (Aff. 327 Log 2495.)

Extension 4 to Warrant 32-4 (2005) was authorized on April 10, 2006.  The affidavit shows that, on March 17, 2006, Cauthorn made a series of calls to an unidentified male regarding what the affiants believe to be payment for a delivery of approximately half a kilogram of cocaine.  (Aff. 358-9 Logs 2979, 2982, 2983, 2986, 2987.)  It also shows that, on March 22, 2006, Cauthorn spoke with one of his suspected cocaine distributors.  (Id. at 370 Log 3257.)  According to the affiants' interpretation, Cauthorn was telling his distributor that he had cocaine available for him.  (Id.)  The affidavit further shows that, on March 23, 2006, Cauthorn spoke with an unidentified male about the price of cocaine and about problems with the quality of a recent supply of cocaine.  (Id. at 385-86 Log 3430.)

3.      Warrant 32-1 (2006), January 4, 2006 - Barksdale

16

On January 4, 2006, a wiretap warrant was issued for another one of Barksdale's telephones with the number 484-904-7188. The affidavit provided an ample factual predicate to fulfill Title III's necessity requirement. (Aff. 202-08.) The affidavit also provided the same evidence regarding Barksdale's involvement in drug-trafficking as Warrant 32-1 (2005). In addition the affidavit stated that, on December 17, 2005, CI-1 told the police that Barksdale had recently saved a new contact telephone number on CI-1's cellular telephone and told CI-1 that he could contact Barksdale at that number. (Aff. 194.) That number was the number targeted by the warrant, 484-904-7188. (Id.) Then on December 30, 2005, CI-1 contacted Barksdale at that number to conduct a controlled buy of 125 grams of cocaine. (Id. at 196-97.) We find that these facts are sufficient to support the findings of probable cause required by Title III.

The warrant was renewed on February 2, 2006. That affidavit supporting the application for that extension shows that, on January 24, 2006, Barksdale spoke with an unidentified male about their drug trafficking activities and the fact that they needed to make a plan to cooperate with each other. (Aff. 281-84 Log 1456). It also shows that, on January 27, 2006, Barksdale spoke with an unidentified male about their need to find a "stash spot" which the affiants know to mean a location to secure money and drugs for the organization. (Id. at 291 Log 1801). In addition, it shows that on January 28, 2006, Barksdale spoke with an unidentified male who told him that he was planing to renew his cocaine supply. (Id. at 296-97 Log 1934).

We find that the application for the warrant's extension provided sufficient evidence to support a finding of the probable cause required by Title III.

      4.      Warrant 32-2 (2006), January 18, 2006 - Majeed

            a.      Original Application and Extensions 1 and 2

On January 18, 2006, a wiretap warrant was issued for the telephone number 267-918-9515, which was being utilized by Bernie Majeed at that time. A careful review of the affidavit offered in support of the order revealed that the wiretap application fully complied with the requirements of Title III.

The affidavit alleged sufficient facts to meet the necessity requirement. (Aff. 326-32.) The affidavit also provided ample evidence to support the findings of probable cause required by Title III. The affidavit contains the confidential informant and criminal record information that was included in the application for Warrant 32-2 (2006). It also provides ample evidence in the form of intercepted telephone conversations involving Majeed which the affiants interpret as referring to Majeed's drug related activities. Examples of the evidence provided include the affiants' interpretations of conversations in which they find that Majeed: (1) made plans with Barksdale to receive drug profits, (Aff. 77-78 Log 154); (2) made plans with Barksdale to evade the police by obtaining new telephones, (id. at 83-85 Log 197, 92 Log 519); (3) arranged for Barksdale to meet with Majeed's drug supplier, (id. at 93-95 Logs 550, 552, 591); (4) spoke with Cauthorn and an unidentified male about trying to obtain more cocaine for redistribution (id. at 186-7 Log 213, 295-298 Log 1311); and (5) spoke with Cauthorn about newly supplied cocaine (id. at 307-08 Log 84). These drug-related conversations took place as late as the same week that the wiretap order was obtained. In addition, the affidavit shows that Majeed utilized the targeted telephone number, 267-918-9515, several times to contact Cauthorn to speak about drug-trafficking activities. (Id. at 307-08 Log 84.)

Accordingly, we find that the affidavits show sufficient necessity for the wiretap and provide sufficient probable cause that: (1) Majeed was involved in drug-trafficking; (2) that he

utilized the targeted telephone for conversations related to drug-trafficking; (3) and that a wiretap on that telephone would likely yield evidence regarding Majeed's drug-trafficking activities.

Extension 1 to Warrant 32-2 (2006) was approved on February 15, 2006.  The supporting affidavit shows that, on January 19, 2006, Majeed spoke with Barksdale and told him that he had just met with one of his cocaine suppliers.  (Aff. 289-90 Log 7.)  It also shows that, later that same day, Majeed again spoke with Barksdale who told him that he thought he had detected police surveillance.  (Id. at 299-303 Log 28.)  In addition, the affidavit contains evidence that, on January 21, 2006, Majeed spoke with Cauthorn who told him that he had a buyer for "the whole other block," which the affiants interpreted to mean a kilogram of cocaine.  (Id. at 311 Log 24.)

Extension 2 to Warrant 32-2 (2006) was approved on March 13, 2006.  The affidavit shows that on February 16, 2006 Majeed spoke with an unidentified male who, according to the affiants' interpretations, wanted to know whether Majeed was going to meet with him to obtain cocaine.  (Aff. 252-53 Log 241.)  It also shows that, on February 20, 2006, Majeed spoke with Pierce and talked with him about the price of cocaine.  (Id. at 260 Log 82.)  Furthermore, the affidavit shows that, on February 25, 2006, Majeed spoke to Cauthorn to tell him that he had detected surveillance units and that he should be vigilant.  (Id. at 272-74 Log. 296.)

We find that the applications for Extensions 1 and 2 contained sufficient evidence to meet the requirements of Title III.

> b. Extension 3

Extension 3 to Warrant 32-2 was authorized on April 10, 2006.  Defendants move to suppress all evidence obtained through Extension 3 on the ground that the applications' affidavit

does not support a finding of probable cause under Title III.  This argument is based on the fact that the affidavit fails to label any calls that took place after February 15, 2006, as having been captured on the targeted telephone number, 267-918-9515.

Title III states that the suppression of evidence obtained through a warrant is merited where "the application or approval order 'under which it was intercepted is insufficient on its face.'"  18 U.S.C. § 2518(10)(a).  However, that section does not require suppression "because of a minor facial insufficiency that does not substantially impair the accomplishment of Congress' purpose."  United States v. Swann, 526 F.2d 147, 149 (9th Cir. 1975).  A facial insufficiency "which is technical . . . [is] insufficient to require suppression."  United States v. Acon, 513 F.2d 513, 519 (3d Cir. Pa. 1975).  A defect is technical where "there ha[s] been substantial compliance with the statute."  Id.  Furthermore, a defect is grounds for suppression only where it is "likely to affect the judge's determination that a wiretap is or is not warranted."  Id. at 517.  Suppression is not appropriate where an affidavit is "at worst, ambiguous" if it nonetheless "contain[s] all the information necessary for the approval of the wire-tap."  United States v. Ceraso, 467 F.2d 647, 653 (3d Cir. 1972).  We must determine, therefore, whether the judge correctly made a "practical, common-sense decision" that the "'totality of the circumstances' indicate[d] that there is probable cause that the sought-for evidence will be obtained."  Nixon, 918 F.2d at 900 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983).

Because the application in question involved Extension 3 to the warrant, the question before the issuing judge was whether the application established sufficient evidence to conclude that Majeed continued to use the telephone number 267-918-9515 to conduct drug-trafficking activities after March 13, 2006, the date on which the previous extension, Extension 2, was

authorized.  The first call that the application reveals after March 13 took place on March 19 and

the last took place on April 4.[6]  Therefore, the question before us is whether the affidavit's

failure to specifically label the calls from March 13 to April 4 as being captured on the telephone

number 267-918-9515 makes the application "insufficient on its face" to support a finding of

probable cause.

　　　　When reviewing an extension application "the court is required to make the same findings

that are required in connection with the original order."  United States v. Giordano, 416 U.S.

505, 530 (U.S. 1974).  Our review of the warrant indicates that there was a substantial basis for

the issuing judge to conclude that the "totality of the circumstances" indicated that there was

probable cause to believe that Majeed was continuing to use the telephone number 267-918-9515

to conduct criminal activity and that conversations related to that activity were likely to be

obtained on that number.  Although the application did not label the conversations from March

13, 2006, to April 4, 2006, as having come from that number, the judge had ample "practical,

common-sense" grounds to conclude that those entries referred to conversations obtained on the

telephone number 267-918-9515.  The introduction of the affidavit clearly states that the

telephone that they are targeting in that application is the telephone number 267-918-9515.  The

---

[6]　　　　It appears that the affidavit also includes unlabeled calls from February 14, 2006
to March 11, 2006.  However, even assuming that the February 14 to March 11 calls were
recklessly included without a label, such a mistake would not merit suppression if, once those
calls are "set to one side, there remains sufficient content in the warrant affidavit to support a
finding of probable cause."  Franks v. Delaware, 438 U.S. 154, 172 (1978).  In the present case,
those particular calls are not relevant to our present analysis because this application needed
simply to establish that evidence sufficient to support a finding of ongoing probable cause was
obtained from the previous application, which was authorized on March 13, 2006.  Accordingly,
the lack of labeling on the calls from February 14 to March 11 is not material to our
determination of probable cause for Warrant 32-2 Extension 3.

only label contained on the application specifying any of Majeed's numbers is the label on page

194 of the affidavit, which states: "Interception of Electronic and Wire Communications /

January 18, 2006 through February 13, 2006 / T Mobile Cellular Telephone 267-918-9515."

Although there is no new heading for the calls starting on March 13, there is absolutely nothing

indicating that the calls may have come from a different telephone number.  The affidavit simply

continued to list calls received by Majeed on his cell phone.  Because there is no other number

targeted on that particular warrant, absent indication to the contrary, the affidavit would support

a common sense conclusion that the conversations from March 13 to April 4 are simply a

continuation of the previous calls and were received on the same telephone.  Perhaps most

importantly, immediately after the conclusion of the March 13 to April 4 calls, the affidavit

states: "Your affiants interpret these statements and actions of Burnie Majeed and his co-

conspirators, both known and unknown, [to mean that they] are using the telephone facility 267-

918-9515 to facilitate cocaine trafficking in and around the Delaware County area."  (Aff. 313.)

It would be illogical for that statement to follow conversations that were captured on any other

number since those conversations would indicate nothing about Majeed's propensity for using

the telephone number 267-918-9515.  We find that, based on these facts, the reviewing judge had

a substantial basis to logically conclude that all of the calls captured from March 13 to April 4

were received on the telephone number 267-918-9515.

Accordingly, we find that the affiants' failure to label the conversations from February 15

to April 4 is a "minor facial insufficiency" that was not likely to affect "the judge's

determination that a wiretap is or is not warranted."  Swain, 526 F.2d at 149.  Accordingly, we

conclude that the defect does not merit suppression.

Furthermore, the calls contained within Extension 3 are sufficient to support a finding of probable cause.  The calls shows that, during March 2006, Majeed was involved in several trafficking related telephone conversations.  For example, on March 19, 2006, Majeed spoke with Cauthorn about Cauthorn meeting with a potential cocaine supplier.  (Aff. 288 Log 181.) On March 22, 2006, Majeed spoke with Barksdale who wanted to meet with Majeed.  (Id. at 293-94 Log 25.)  The affiants interpret the conversation to meet that Barksdale need to get additional cocaine supplies from Majeed.  (Id.)  On March 27, 2006, Majeed spoke with Cauthorn about the fact that another trafficker's cocaine prices were better than Majeed's.  (Id. at 302.)  We find that the affidavit contains sufficient evidence to support a finding of ongoing probable cause that would justify the authorization of Extension 3.

Because we find that the application is sufficient on its face and "within its four corners," we need not address the Government's request to introduce evidence that the subject calls were captured on the telephone number 267-918-9515.  However, it is worth noting that this Court's review of the other wiretap warrants in this case supports the Government's contention that the calls were actually captured on that number.  Extensions 3 and 4 of Warrant 32-4, which authorized the interception of calls on one of Cauthorn's telephones, record many of the same conversations from the opposite end, that is, from Cauthorn's telephone.  Those affidavits' logs show clearly that the incoming calls from Majeed to Cauthorn during which those conversations occurred were generated using the telephone number 267-918-9515.[7]  Although this finding does not affect the issue of probable cause, the evidence does support the Government's argument that

_____

[7]    See Warrant 32-4 (2005) Extension 3, Aff. 276 Log 1766; 280 Log 1837; 284 Log 1928; 287 Log 1930; 287 Log 1951; 315 Log 2340; 274 Log 2483; 341 Log 2668; 346 Log 2720; see also Warrant 32-4 (2005) Extension 4, 397 Log 3687; 398 Log 3692.

the defect was a technical label omission rather than a substantive failure.

      5.      Warrant 32-3 (2006), February 15, 2006 - Majeed

          a.      Original warrant application and Extension 1

Warrant 32-3 was authorized on February 15, 2006 for the interception of Majeed's

telephone number 267-304-5325. The supporting affidavit provides evidence that Majeed was

involved in drug-trafficking activities. (See, e.g., Aff. 263-266 Log 1311 (Majeed speaking with

an unidentified male about new drug suppliers); 273 Log 84 (Majeed telling Cauthorn that his

source has cocaine available for the organization)). The affidavit also supports the inference that

Majeed utilized the target number, 261-304-5325, to conduct drug-related activities. For

example, the affidavit shows that Majeed commonly used this number to contact his marijuana

supplier. (Id. at 117-25 Logs 820, 1260, 1367, 168, 497, 517.) The affidavit also states that the

affiants were able to determine, by cross-referencing the toll records for the target number with

intercepted communications between Cauthorn, Majeed, Pierce, and Barksdale, that Majeed

utilized the target number to contact another one of his drug suppliers. (Id. at 363.) Therefore,

the affidavit provides sufficient evidence that drug-related conversations are likely to be

captured through a wiretap of the targeted number and that Majeed is using that number in

connection with drug-trafficking activities. In addition, the affidavit sets forth a factual basis to

show the necessity for the wiretap. (Id. at 385-91.) Accordingly, we find that the affidavit

contains sufficient information to comply with the probable cause and necessity requirements of

Title III.

Extension 1 to Warrant 32-3 was authorized on March 13, 2006. The supporting

affidavit shows that, on February 20, 2006, Majeed utilized the targeted number to contact a

source to obtain cocaine.  (Aff. 260 Log 6.)  The affidavit also shows that, on February 21, 2006,

Majeed received a call on the targeted number from a person who sought to buy cocaine.  (Aff.

261-62 Log 55.)  We find that this evidence supports a finding of ongoing probable cause.

        b.     Extensions 2 and 3

       The Government explains that Extensions 2 and 3 of Warrant 32-2 "incorrectly

report that . . . 29 telephone conversations were intercepted as a result of the wiretap of 267-304-

5325, when they were in fact intercepted on telephone 267-918-9515."  (Gov't's Supplemental

Resp. 3.)  They further concede that, as to those particular extensions, the error had a direct

impact on the Judge's determination of probable cause.  (Id.)  However, because the Government

has stated that it will not seek to introduce any of the conversations obtained from those two

extensions, we need not reach the issue of whether the evidence obtained from the questionable

extensions should be suppressed.

On the other hand, we do need to examine whether those extensions were used to support

any other warrant and, if so, whether the omission of such conversations would result in a lack of

probable cause for the affected warrant.  Under the principle established by the Supreme Court in

Franks v. Delaware, 438 U.S. 154 (1978), a warrant need not be suppressed if, when the

allegedly improper material is "set to one side, there remains sufficient content in the warrant

affidavit to support a finding of probable cause."  Id. at 172.  Therefore, "we need merely excise

the references to the [allegedly illegal warrant extension] and the fruits thereof in examining the

affidavit upon which the warrant was based to determine if there was probable cause for the

warrant."  United States v. Herrold, 962 F.2d 1131, 1138 (3d Cir. 1992).  Accordingly, out of an

abundance of caution, we will assume that Extensions 2 and 3 to 32-3 (2006) were improperly

issued and examine whether any warrants that make reference to them or to evidence obtained from them are supported by probable cause based on evidence not tainted by the extensions.

In its submission, the Government identifies the following wiretap warrants as having referenced Warrant 32-3 Extension 2 or Extension 3: (1) Warrant 32-12 (2006) (for Johnson's telephone); (2) Warrant 32-15(2006) (for Johnson's telephone); (3) Warrant 32-21 (2006) (for Johnson's telephone); (4) Warrant 32-23 (2006) (for Majeed's telephone); (5) Warrant 32-26 (2006) (for Johnson's telephone); (6) Warrant 32-28 (2006)(for Johnson's telephone); and (7) Warrant 32-31 (2006) (for the Kia Sportage).[8]  In analyzing the adequacy of each of the aforementioned warrants below, we will focus on the issue of whether the warrants' reliance upon or mention of the subject extensions affects their validity in any way.

6.      Warrant 32-4 (2006), February 21, 2006 - Barksdale

Warrant 32-4 was authorized on February 21, 2006, for the interception of Barksdale's telephone number 484-904-8424.  On that date, Barksdale called T-Mobile customer service to change his telephone number, 484-904-7188, and received the new telephone number 484-904-8424.  (Aff. 323-35 Log 4412.)

The affidavit supporting the warrant established facts to meet the necessity requirement. (Aff. 330-36.)  The affidavit also shows that Barksdale had been consistently conducting drug-trafficking activities using his old number, 484-904-7188.  (Aff. 194-95 Log 671; 211-12 Log

---

[8]      The Government's submission explains that neither Majeed's Delaware search warrants nor Gandy's search warrants made mention of the warrant extensions in question.  They do state that Majeed's Pennsylvania and New Jersey warrant make some reference, albeit erroneously, to 32-3 (2006).  However, by way of separate order we analyze each of the subject search warrants and find that, without having to consider any evidence allegedly obtained from 32-3 (2006), the warrants are supported by ample probable cause.  Because we address the issue of probable cause in detail in that Order, we need not do so here.

1015; 228-29 Log 484.)  According to the affiants, Barksdale decided to change the telephone

number to avoid the calls of a woman who called him 160 times over the course of two days

between February 13 and February 14, 2006.  (Id. at 325.)  The affidavit shows the call during

which Barksdale contacts the telephone company and received the new telephone number.  (Id.

at 323-35 Log 4412.)  The affidavit also mentions that, as soon as Barksdale changed his

number, he used the new number to contact his suspected co-conspirator, Cauthorn.  (Aff. 330.)

We find that the affidavit provided sufficient facts to support a finding of the probable cause

required under Title III.

　　　　Extension 1 to Warrant 32-4 (2006) was authorized on March 21, 2006.  The affidavit

supporting the application for that extension shows that Barksdale was continuing to use the

targeted number to conduct drug trafficking-related activities.  For example, the affidavit shows

that: (1) on February 27, 2006, Barksdale spoke with Majeed and Cauthorn about the fact that

both he and Majeed had detected what they thought to be a surveillance vehicle, (Aff. 227-28

Log 602); (2) on March 3, 2006, Barksdale spoke with Johnson who told him that he had been

unable to sell the drugs currently in his possession and that he was going to have to pay for the

drugs out of his own pocket, (id. at 230-31 Log 996); (3) on March 13, 2006, Barksdale spoke

with an unidentified male who told him, in coded language interpreted by the affiants, that he

would have cocaine available for Barksdale once Barksdale was ready, (id. 236 Log 65).

　　　　Extension 2 was authorized on April 19, 2006.  The supporting affidavit shows that: (1)

on March 25, 2006, Barksdale spoke with a customer who informed him that Barksdale had

given him a smaller quantity of cocaine than he was supposed to (Aff. 255 Log 166); (2) on

March 29, 2006, Barksdale spoke with a person named Anthony Collins and told him that he was

27

trying to obtain cocaine (id. 262 Log 3073); and (3) on April 1, 2006, Barksdale spoke with an unidentified male who asked Barksdale whether he had cocaine available for sale (id. at 366 3456).  We find that each of the extension applications for Warrant 32-4 provides a sufficient factual predicate to support the findings required by Title III.

       7.      Warrants 32-5 and 32-6 (2006), March 6, 2006 - Pierce

On March 6, 2006, a wiretap warrant was authorized for the interception of two cellular telephones utilized by Richard Pierce.  The supporting affidavits for both applications are identical.

The affidavits state that, between June 30, 2005, and August 30, 2005, Pierce's telephone number appeared 374 times in the pen register for the telephone number that Barksdale was utilizing at that time.  (Affs. 51.)  The affidavits also detailed Pierce's criminal history, which included pleading guilty with possession of a controlled substance with intent to deliver a controlled substance in 1987 and a conviction of possession with intent to distribute cocaine hydrochloride in 1993.  (Id. at 51-2.)  The affidavit also cites the information provided by a confidential informant referred to as CI-5.  CI-5 stated that, in the past few years, he had purchased large quantities of cocaine from Barksdale, Cauthorn, and Pierce.  (Id. at 47-8.)  The affidavit also states that CI-5 has provided the police with reliable tips regarding other drug-traffickers in the past that they later independently corroborated.  (Id. at 47.)  They also state that they have always found CI-5 to be truthful.  (Id.)

The affidavits provide evidence obtained through intercepted conversations in which Pierce spoke with Majeed and Barksdale about drug-trafficking matters.  The affiants interpret the conversations to indicate that Pierce purchased two kilograms of cocaine from Majeed in

January of 2006.  (Id. at 305-6 Log 34, 308-10 Log 54, 426-27.)  The affidavits also note that he

spoke with Barksdale about obtaining cocaine from him for resale.  (Id. at 439 Log 3449).  In

addition, the affiants found through physical surveillance that, approximately a week after the

conversations from which they deduced that Pierce purchased cocaine from Majeed, Pierce was

seen traveling to what the officers believe to be a nightclub that is a well-known location for the

sale of cocaine.  (Id. at 432.)

The affidavits also show that Pierce utilized the targeted telephone number 302-685-1329

to contact Majeed regarding cocaine transactions.  (Affs. 305-10 Log 34, 38, 40, 42, 45, 52, 54.)

The affidavit also stated that, according to CI-1, Pierce utilized the telephone number 610-842-

4611 to contact Barksdale regarding drug sales.  (Affs. 438-39 Log 3436.)  As such, we find that

the affidavit contained sufficient evidence to establish probable cause that: (1) Pierce was

involved in drug-trafficking; (2) Pierce utilized his telephone to arrange drug-trafficking

activities; and (3) Pierce utilized the targeted numbers in connection with his drug-trafficking

activities.  Finally the affidavits allege sufficient facts to establish that the wiretap was

necessary.  (Affs. 447-454.)  Accordingly, we find that the affidavits complied with the

requirements of Title III and the wiretaps were therefore lawfully issued.

8.      Warrant 32-8 (2006), April 3, 2006 - Johnson

Warrant 32-8 was authorized on April 3, 2006 for the interception of Johnson's number

267-288-1225.  The affidavit shows that, throughout the month of March 2006, Johnson utilized

the targeted number on several occasions to speak to Barksdale.  (Aff. 237 Log 1623; 238 Log

1766; 239 Log 2351; 240 Log 2426.)  It also shows that, on March 26, 2006, Barksdale called

Johnson on the targeted number and asked for a price quote on cocaine.  (Id. at 243 Log 2840.)

Furthermore, the affidavit establishes a sufficient factual predicate to show that the wiretap is necessary.  (Id. at 249-53.)

Extension 1 to Warrant 32-8 was authorized on May 3, 2004.  The supporting affidavit shows that, on April 5, 2006, Johnson spoke with an unknown male on the targeted number and agreed upon the sale of four ounces of cocaine.  (Aff. 247-48 Log 2.)  It also shows that on April 6, 2006, Johnson spoke to Cauthorn who asked him, according to the affiants' interpretation, whether he wanted drugs.  (Aff. 253 Log 50.)  Johnson said yes.  (Id.)  On April 25, 2006 Johnson spoke with one of his customers who requested a "BG" meaning a "ball game" or 3.5 grams of cocaine.  (Aff. 311 Log 1292.)  On May 1, 2006, Johnson spoke to an unidentified male and told him that he had some cocaine available.  (Aff. 321-22 Log 5266.)

Extension 2 to Warrant 32-8 was authorized on June 1, 2006.  The supporting affidavit shows that, at numerous times in late May, Johnson utilized the targeted number to speak with customers who requested cocaine.  (Aff. 31026 Log 3368; 31033 Log 3382; 31034 Log 3401; 31039 Log 3447.)

Extension 3 to Warrant 32-8 was authorized on June 29, 2009.  The supporting affidavit for the extension shows that, in late June, Johnson repeatedly utilized the targeted telephone to receive drug orders from customers.  (Aff. 437 Log 5659; 447-48 Log 5951; 451-52 Log 606; 449 Log 6020.)

We find that the affidavits supporting the warrant and each extension contain sufficient facts to meet the requirements of Title III.

9.    Warrant 32-10 (2006), May 7, 2006 - Kaplan

Warrant 32-10 was authorized on April 19, 2006 for the interception of Kaplan's

telephone number 267-265-7294.  The affidavit provides a sufficient factual predicate to meet

the necessity requirement.  (Aff 348-53.)  In addition, the affidavit supports the findings of

probable cause required under Title III.  The affidavit provides information regarding Kaplan

obtained from CI-6.  (Aff. 35-6.)  According to the affiants, CI-6 has provided reliable

information to the Philadelphia Police Department regarding drug traffickers.  (Id.)  The

information provided by CI-6 has resulted in the arrest of more than 10 individuals, the

execution of more than 4 search warrants, and the seizure of large quantities of controlled

substances.  (Id.)  CI-6 stated that Kaplan is a very large cocaine trafficker in the city of

Philadelphia and that he himself had purchase kilogram quantities of cocaine from Kaplan.  (Id.

at 36.)  The affidavit also shows that in April 2006, Kaplan utilized the targetted number several

times to communicate with Majeed.  (See, e.g., id. 316 Log 789; 319 Log 801; 329 Log 859.)

According to the affiants' interpretations, during several of these calls Kaplan and Majeed

coordinated meetings in order for Kaplan to deliver cocaine to Majeed.  (See, e.g., id. at 315 Log

763; 316 Log 781; 333 Log 136.)  We find that the affidavit provides sufficient facts to support

the findings of probable cause required by Title III.

      10.    Warrant 32-11 (2006), May 9, 2006 - Barksdale

      Warrant 32-11 was authorized on May 9, 2006 for the interception of Barksdale's

telephone number 267-266-5461.  The affidavit provides an ample factual predicate to show

necessity for a wiretap.  (Aff. 355-61.)  In addition, the affidavit contains ample support for a

finding of probable cause.  The affidavit includes the information derived from confidential

informants and controlled cocaine purchases from Barksdale as described in our discussion of

Warrant 32-1 (2005) above.  In addition, the affidavit shows that Barksdale utilized the targeted

number to communicate with Kaplan on at least two occasions.  (Id. at 344 log 180; 345 Log 183; 352 Log 303.)  The affiants believe that the purpose of several of those communications was to arrange a trafficking-related meeting with Kaplan.  (Id.)  We find that the affidavit contains sufficient evidence to support the findings of probable cause required by Title III.

    11.    Warrant 32-12 (2006), May 19, 2006 - Majeed

    Warrant 32-12 authorized the interception of Johnson's telephone number 610-457-6110 from May 19, 2006 to June 13, 2006.

    The affidavit supporting the application for Warrant 32-12 is one of the affidavits that makes mention of Warrant 32-3 (2006).  Although the affidavit mentions the fact that 32-3 (2006) authorized the interception of one of Majeed's telephone numbers, it makes no reference to any conversations obtained from that warrant or any of its extensions.  In addition, it does not make mention of any evidence regarding the telephone number targeted by 32-3.  Accordingly, we find that this warrant is in no way affected by the validity of Warrant 32-3.

    We further find that the warrant was properly issued.  The affidavit shows that Johnson utilized his cellular telephones to arrange cocaine transactions.  (See, e.g., Aff. at 345-46 Log 2307.)  The affidavit also shows that Kaplan, one of the main members of the trafficking organization, utilized the targeted telephone number to contact Johnson.  (Id. at 367 Log 258, 368-69 Log 293.)  During one of those conversations Johnson alerted Kaplan that a person who the affiants believe to be one of Kaplan's sources was attempting to get in touch with him.  (Id. at 368-69 Log 293.)  We find that the affidavit contains sufficient evidence to support a finding of probable cause for the electronic interception of the targeted number.  In addition, the affidavit contains a sufficient showing that the wiretap is necessary.  (Aff. 355-61.)

12.     Warrant 32-13 (2006), May 23, 2008 - Cauthorn

On May 23, 2008, a wiretap warrant was issued for Troy Cauthorn's telephone number 215-971-1691.  The affidavit shows that Cauthorn used the targeted telephone number[9] to communicate with his confederates about providing cocaine to them.  (Aff. 446 Log 36, 448-49 Log 45, 50, 51, 52.)  The affidavit also provides a showing of necessity.  (Aff. 583-57.) Accordingly, we find that the affidavit meets the requirements of Title III.

13.     Warrant 32-15 (2006), June 7, 2006 - Johnson

Warrant 32-15 was authorized on June 7, 2006 for the interception of Johnson's telephone number 610-864-4930.  The warrant application mirrors Warrant 32-12 (2006).  Like the affidavit for Warrant 32-12, the affidavit mentions the fact that 32-3 (2006) authorized the interception of one of Majeed's telephone numbers but makes no reference to any conversations obtained from that warrant or any of its extensions.  In addition, it does not make mention of any evidence regarding the telephone number targeted by 32-3.  Accordingly, we find that this warrant is in no way affected by the validity of Warrant 32-3.

The warrant application for Warrant 32-15 contains all of the information included in the application for Warrant 32-12.  In addition, it contains evidence obtained as a result of the wiretap authorized through Warrant 32-12.  The affidavit shows that Johnson continued to utilize his cellular telephones to conduct drug business.  It details a conversation with an unidentified male about trying to obtain cocaine.  (Aff. 372-73 Log 7.)  It also contains a conversation in which Johnson spoke with a potential cocaine client.  (Id. 428-29 Log 492.)  The affidavit also

---

[9]     The affidavit initially refers to the telephone number by IMSI 316010105466324. However, the affidavit later explains that the IMSI number is the IMSI number for the cellular telephone number 215-971-1691.  (Aff. 583.)

details a conversation between Johnson and Barksdale on the targeted phone number, 610-864-4930, in which they discuss the whereabouts of Kaplan. (Id. at 431-32 Log 68.) The affidavit also establishes the reasons why the wiretap was necessary. (Id. at 435-40.) Accordingly, we find that the affidavit meets the requirement of Title III and was therefore properly issued.

Extension 1 was authorized on July 6, 2006. The affidavit shows that, on June 8, 2006, Johnson spoke with one of his distributors, Trent Lewis, who asked Johnson to supply him with cocaine as soon as he received it from his supplier. (Id. at 361-62 Log 33.) It also shows that, on June 10, 2006, Johnson speaks with a person named Malik Sullivan about pooling their resources together to obtain cocaine. (Id. 367-68 Log 93.) In addition, it shows that, on June 16, 2006, Johnson spoke with one of his cocaine distributors who wanted to repay a drug debt and to obtain more cocaine from Johnson. (Id. at 383 Log 211.) Furthermore, it shows that, on July 3, 2006, Johnson spoke with Lewis about obtaining more cocaine for him. (Id. at 437 Log 727.)

Extension 2 was authorized on August 2, 2006. The affidavit shows that: (1) on July 16, 2006, Johnson spoke with Lewis regarding complaints from his customers regarding cocaine that Johnson had supplied to Lewis, (Aff. at 469-470 Log 974); (2) on July 24, 2006, Johnson spoke to Lewis about the fact that he had run out of cocaine and therefore had nothing to supply him with at that time (id. at 481-82 Log 1086).

Extension 3 was authorized on August 29, 2006. On August 12, 2006, Johnson spoke with Sullivan to request his help in cooking crack cocaine. (Aff. 532-33 Log 1593.) On August 18, 2006, Johnson spoke with a person named Joseph Dukes about selling him cocaine. (Id. at 571-72 Log 1932.) On August 26, 2006, Johnson spoke with a person named Anthony Collins to request his help in cooking  cocaine. (Id. at 591 Log 2087.)

Extension 4 was authorized on September 27, 2006.  The affidavit shows that: (1) on September 4, 2006, Johnson spoke with Lewis who requested that Johnson provide him two ounces of cocaine, (Aff. 603-04 Log 2238); (2) on September 18, 2006, Johnson again spoke with Lewis about one of his customers seeking a large quantity of cocaine, (id. 634-35 Log 2498); (3) on September 21, 2006, Johnson spoke with Dukes who requested a cocaine supply from Johnson (id. 639 Log 303).

Extension 5 was authorized on October 26, 2006.  The affidavit shows that: (1) on October 6, 2006, Johnson spoke with an unidentified male about providing him with an "eight ball" of cocaine, meaning an eighth of an ounce of cocaine, (Aff. at 659 Log 2881); (2) on October 19, 2006, an unidentified male again ordered an "eight ball" from Johnson over the telephone, (id. at 677 Log 518); (3) on October 23, 2006 Johnson spoke with Duke about providing him more cocaine, (id. at 680 Log 3387).

We find that each of the extension applications contains sufficient information to meet the requirements of Title III.

14.     Warrant 32-16 (2006), June 16, 2006 - Barksdale

On June 16, 2006, a wiretap warrant was issued for the telephone number 267-319-5450, which was being utilized by Barksdale at that time.  The affidavit shows that Barksdale continued to engage in drug-trafficking activities and to use cellular telephones in connection with those activities.  (Aff. 378 Log 93; 383-83 Log 250; 389-90 Log 442.)  The affidavit also shows that Barksdale had been in frequent contact with Johnson to try to locate Kaplan, one of the organization's suspected suppliers.  (Id. at 397 Log 68; 402-03 Log 100.)  In addition, the affidavit shows a telephone call by Barksdale using the targeted telephone number in which he

explained to Johnson that he would be using that new number to be in touch with only him and another person, who the affiants believe to be Kaplan.  (Id. at 414-16 Log 172.)  According to the affiants' expert interpretation, Barksdale acquired this new number to avoid police detection by limiting the people that he speaks to on certain telephones.  (Id. at 415.)  In the affidavits, the affiants also interpret a conversation on the targeted number in which they believe Barksdale contacted Johnson to inquire whether he needed additional supplies of cocaine.  (Id. at 416-17 Log 15.)  The affidavit also establishes a factual basis showing necessity.  (Id. at 418-25.)  For these reasons we find that the affidavit satisfies each of the probable cause and necessity requirements of Title III.

Extension 1 to Warrant 32-16 was authorized on July 13, 2006.  The affidavit for that extension shows that Barksdale continued to engage in drug-trafficking activities using the targeted telephone number.  For example, the affidavit shows that, on June 20, 2006, Barksdale spoke with one of his cocaine suppliers regarding a request for cocaine.  (Aff. 351-52 Log 66.)  On June 21, 2006, Barksdale spoke with Gandy who told him that he had detected what he thought was a police surveillance vehicle.  (Id. at 355-56 Log 141.)  On June 27, 2006 Barksdale spoke with one of his suppliers who told him he is "back on board," which, according to the affiants, means that he had cocaine available.  (Id. at 362-63 Log 474.)  We find that the extension application provides sufficient facts to support a finding of probable cause under Title III.

15.     Warrant 32-19 (2006) , July 20, 2006 - Cauthorn

On July 20, 2006, a wiretap warrant was issued for the telephone number 215-910-6620, which was being utilized by Cauthorn at that time.  The affidavit shows that, during June and

36

July of 2006, Cauthorn was frequently in contact with Johnson via telephone regarding drug trafficking matters.  (Aff. 631 Log 681, 635 Log 62, 640 Log 75, 645 Log 7547, 645 Log 7821.)  The affidavit also shows that Cauthorn was specifically utilizing the targeted telephone number to contact Johnson to talk about trafficking-related issues.[10]  (Aff. 645-46 Log 7821.)  The affidavit also shows that the wiretap was necessary.  (Aff. 468-52.)  We find that the wiretap application met each of the probable cause and necessity elements required under Title III.

Extension 1 to Warrant 32-19 (2006) was authorized on August 17, 2006.  The supporting affidavit shows that, on July 27, 2006, Barksdale spoke with Cauthorn who told him that he was trying to get more supplies of cocaine.  (Aff. 667 Log 364.)  It also shows that, on July 30, 2006, Cauthorn spoke with one of his cocaine distributors who told Cauthorn that he had money for him.  (Id. at 670 Log 156.)  Furthermore, it shows that, on August 7, 2006, Cauthorn spoke to Darren Cephas, one of his cocaine distributors, regarding a debt that Cephas owed him.  (Id. at 690 Log 1008.)  We find that the supporting affidavit included sufficient facts to support a finding of probable cause.

16.    Warrant 32-20 (2006), July 20, 2006 - Barksdale

On July 20, 2006, a wiretap order was issued for the telephone number 215-670-8521, which was being utilized by Barksdale at that time.  According to the affiants, Barksdale utilized the targeted telephone number to speak to Johnson and Kaplan about trying to meet with Kaplan to obtain cocaine.  (Aff. 384-85 Logs 7524, 7527.)[11]  The affidavit also shows that the use of

---

[10]    The affidavit initially refers to the telephone number by IMSI 316010105435212.  However, the affidavit later explains that the IMSI number is the IMSI number for the cellular telephone number 215-910-6620.  (Aff. 645)

[11]    These logs refer to the "direct connect" number 183-624-1651.  The affidavit shows that the targeted telephone number 215-670-8521 is the telephone number associated with

wiretaps continued to be necessary.  (Aff. 386-91.)  We find that the affidavit fulfills each of the probable cause and necessity requirements of Title III.

Extension 1 to Warrant 32-20 was authorized on August 17, 2006.  The affidavit for that extension shows that, on July 17, 2006, Barksdale spoke with a person named Damon Foster and told him that a person refereed to as Hank Capone had a large quantity of heroin and that Barksdale was about to meet him.  (Aff. 389 Log 262.)  It also shows that, on July 28, 2006, Barksdale spoke with an unidentified male about a stash location that Barksdale was apparently aware of.  (Aff. 391 Log 362.)  Furthermore, it shows that, on August 14, 2006, Barksdale spoke with one of his sources about obtaining additional cocaine.  (Id. at 445 Log 3686.)  Later that same day, Barksdale spoke with Gandy and told him that he had spotted narcotics officers in Chester and had fled from them.  (Id. at 445-46 Log 3691.)

We find that each of these extension applications alleged sufficient facts to support the findings required by Title III.

17.     Warrant 32-21 (2006), July 28, 2006 - Johnson

Warrant 32-21 was authorized on July 28, 2006.  It authorized the electronic surveillance of Johnson's telephone number 610-441-5120.

The supporting affidavit for 32-21 is one of the affidavits that references Warrant 32-3. The affidavit makes two references to that warrant, both to indicate that the person speaking to Johnson during the relevant call was Majeed.  (Aff. 211, 259.)  However, we find that neither of those calls was necessary to establish probable cause.

The supporting affidavit contains a number of conversations in which, according to the

the given direct connect number.  (Aff. 386.)

38

affiants, a man named Khalil Benn is making arrangements to obtain cocaine from Johnson.
(See Aff. 332-33 Log 3207; 341-2 Log 3259.)  The affidavit further explains that, on July 22,
2006 at 12:15:42 a.m., Johnson received a phone call from Benn asking Johnson to call him on
Benn's other telephone number using Johnson's "other phone" explaining "I got [to] talk to ya
about somethin' right quick."  (Id. at 553 Log 21526.)  Benn asked Johnson to call him using
"[t]he 740 number I left on your phone."  (Id.)  Johnson agreed to do so and concluded the call.
The affidavit explains that, immediately following the conclusion of that call, approximately one
minute later, the toll records for Benn's "740 number"[12] show that Benn received a call from the
targeted telephone number 610-441-5120.  Benn did not receive another call on that phone until
approximately two hours later.  (Aff. 565.)  The affidavit also shows that the toll records for the
targeted number show that it was used to make calls to the telephone numbers utilized by two of
Johnson's cocaine suppliers, with whom he has talked about drug-trafficking over the telephone
during the course of the investigation.  (Aff. 566.)  This evidence supports the inference that
Johnson was utilizing the targeted number to speak with his drug suppliers.  In addition, the
affidavit establishes sufficient facts to show that the wiretap was necessary.  (Aff. 568-72.)

Extension 1 was authorized on August 23, 2006.  The affidavit for Extension 1 shows
that, on July 30, 2006, Johnson spoke on the targeted number with Benn who requested cocaine
from him. (Aff. 571 Log 22.)  On August 16, 2006, Johnson spoke with an unidentified male
who also requested cocaine from him.  (Id. at 528 Log 1705).  On August 19, 2006, Johnson
again spoke to an unidentified male who requested a small amount of cocaine.  (Id. at 635 Log
1927.)

---

[12]     The affidavit shows that Benn's "740" number is 302-740-4220. (Aff. 564.)

Extension 2 was authorized on September 20, 2006.  The affidavit shows that, on September 2, 2006, Johnson spoke on the targeted number with Benn who ordered cocaine from him.  (Aff. at 665 Log 418.)  On September 6, 2006, Johnson spoke with one of his customers who complained about the quality of the cocaine he received.  (Id. at 674 Log 4153.)  On September 14, 2006,  Johnson spoke to a potential customer who inquired whether Johnson had a certain quality of cocaine available.  (Id. at 696 Log 5142.)

Extension 3 was authorized on October 19, 2006.  The affidavit shows that on September 27, 2006, Johnson spoke on the targeted number with an unidentified male who requested 3.5 ounces of cocaine from Johnson and requested that he accompany him to the sale of that cocaine. (Aff. at 726-27 Logs 6455-460.)  On October 5, 2006, Johnson spoke to a male who wanted to purchase cocaine from him.  (Id. at 735 Logs 7331-332.)  Johnson told the male that he only had four ounces remaining.  (Id.)

Extension 4 was authorized on November 17, 2006.  On October 21, 2006, Johnson spoke on the targeted number to one of his distributors who told him that he had a potential client who wanted a sample of the cocaine Johnson was selling in order to determine its quality. (Aff. at 769-70 Logs 9497-498.)  On November 2, 2009, Johnson spoke to one of his customers who complimented him on the high quality of the cocaine that Johnson just delivered.  (Id. at 783-83 Logs 11250, 11263, 11267.)  On November 15, 2006, Johnson spoke with Benn and told Benn to tell a potential customer that Johnson could beat the price of that customer's cocaine supplier.  (Id. at 805 Log 12956.)

18.     Warrant 32-22 (2006), August 2, 2006 - Kaplan

Warrant 32-22 was authorized on August 2, 2006 for the interception of the cellular

telephone number 610-416-7449, commonly utilized by Kaplan.  This application includes all of the evidence discussed in our analysis of Warrant 32-10 (2006) above, including the information from CI-6 regarding Kaplan's drug-trafficking activities.  In addition, the application shows that Kaplan utilized this new telephone number to speak with Johnson on several occasions.  (See, e.g., Aff. 377 Log 392; 394 Log 1016; 402 Log 1028; 403 Log 1062; 411 Log 1111.)  The affiants believe that, in some of these conversations, Kaplan was arranging to meet with his confederates to conduct trafficking-related transactions.  (See, e.g., id. at 403 Log 1062; 444 Log 1209.)  In another call, Kaplan warned Johnson that, when caught by the police, it is acceptable to plead guilty but not to cooperate.  (Id. at 411-13 Log 1123.)

Extension 1 to Warrant 32-22 was authorized on August 29, 2006.  In addition to the information contained in the original application, the affidavit supporting the extension application shows that, on August 3, 2006, Kaplan spoke with Johnson about meeting with Barksdale who the affiants believe wanted to meet with Kaplan to repay a drug debt for cocaine he had received the previous day.  (Aff. 348 Log 254.)  The affidavit also shows that, on August 6, 2006, Kaplan spoke with an unidentified male and, according to the affiants, sought to obtain his help in getting into one of Kaplan's stash locations.  (Aff. 353 Log 717.)  In addition, it shows that, on August 17, 2006, Kaplan spoke with an unidentified male who warned him that he had seen police at a barbershop that the affiants know to be one of the locations where Kaplan conducted trafficking transactions.  (Aff. 364 Log 2089.)  Also, it shows that, on August 18, 2006, Kaplan spoke with Leonard Mason who gave him his home telephone number.  (Aff. 365 Log 2121.)  The affidavit explains that a search of one of Mason's vehicles conducted in July 2006 revealed over three kilograms of cocaine.  (Aff. 365.)

41

Extension 2 to Warrant 32-22 was authorized on September 27, 2006.  The supporting affidavit shows that, on September 12, 2006, Kaplan spoke with a suspected customer who, according to the affiants' interpretation, was asking to meet with Kaplan to obtain cocaine.  (Aff. 378 Log 4391.)  The affidavit also shows that, on that same date, Kaplan spoke with a person named Cedric Carter and, according to the affiants' interpretation, told him that he knew that Leonard Mason had cooperated with the police against certain people.  (Id. at 377-78 Log 4404.) Also, the affidavit shows that, on September 15, 2006, Kaplan spoke with someone who the affiants believe to be one of his drug distributors and reprimanded him for not prioritizing his business.  (Id. at 380 Log 4646.)

We find that the affidavits supporting the warrant and its two extensions provide sufficient grounds to support a finding that they meet the requirements of Title III.

19.    Warrant 32-23 (2006), August 14, 2006 - Majeed

Warrant 32-23 authorized the interception of a telephone number commonly utilized by Majeed, 267-304-5325, from August 14, 2006 to November 27, 2006.

The supporting affidavit for Warrant 32-23 is one of the affidavits that makes mention of the allegedly flawed Warrant 32-3.  The Government asserts that the application for Warrant 32-23 includes calls that were intercepted on 32-2 (2006) (Extension 3) but incorrectly attributes those calls to 32-3.  However, we need not address that contention because we find that, even without any of the conversations that were allegedly incorrectly attributed to 32-3, the application still demonstrates sufficient probable cause to establish that Majeed was utilizing that telephone number to communicate with other members of the organization and to discuss trafficking-related topics.

The affidavit asserts that the affiants have been able to confirm Majeed as one of the main drug sources for Cauthorn and Barksdale.  (Aff. 347.)  The affidavit also shows that, on July 29, 2006, Majeed utilized the targeted telephone to talk to Barksdale to attempt to obtain the telephone number of Kaplan, who the affiants knew to be one of the organization's main suppliers.  (Id. at 341-42 Log 495 (from 32-19).)  The affidavit also details a conversation that took place on August 6, 2006, in which Barksdale and Majeed discussed an unpaid debt from Pierce, which the affiants believe to be a drug debt.  (Id. at 336-38 Log 2317 (from 32-20).)  Accordingly, we find that there is a substantial basis for the issuing judge's finding of probable cause, even without considering any of the evidence attributed to 32-3.  The affidavit also establishes that the wiretap was necessary.  (Id. at 347-53.)

Similarly, we find that the affidavits supporting the three extensions to Warrant 32-23 contain sufficient evidence to support a finding of probable cause.  The affidavit for Extension 1, which was authorized on September 12, 2006, shows that, on September 4, 2006, Majeed utilized the targeted telephone to try to arrange a meeting with Kaplan.  (Aff. 363-65 Log 534.)  Also, on September 6, 2006, Majeed utilized the targeted telephone to speak with Pierce about Pierce repaying the debt which the affiants believe to be drug-related.  (Id. at 368-69 Log 577.)  On September 8, 2006, Majeed called Barksdale to tell him that he needed to get rid of the telephone he was using because he believed it is tapped.  (Id. at 371-72 Log 634.)

The affidavit for Extension 2, which was authorized on October 11, 2006, shows that, on September 24, 2006, Majeed utilized the targeted telephone to contact Cauthorn to arrange a meeting during which the affiants believe he intended to collect drug proceeds from Cauthorn.  (Aff. 383-84 Logs 988, 1005.)  On September 30, 2006, Majeed received a call from his sister

during which she told him that Kaplan was looking for him.  (Id. at 385-86 Log 1082.)  Also, on October 2, 2006, Majeed used the targeted telephone to contact Pierce to attempt to collect on what the affiants believe to be a drug-related debt.  (Id. at 387 Log 1140.)

The affidavit for Extension 3, which was authorized on November 19, 2006, shows that, on October 14, 2006, Majeed called Cauthorn to tell him to arrange a meeting between Majeed and one of the organization's drug suppliers.  (Aff. 328-29 Log 1523.)  On October 18, 2006, Majeed once again called Pierce to try to collect what the affiants believe to be a drug debt.  (Id. at 331 Log 1636.)  On October 18, 2006, Majeed called his sister to arrange a meeting with Kaplan.  (Id. at 333-34 Log 275, 1653.)  On October 27, 2006, Majeed received a call from Clifford Bond, who the affiants believe to be Majeed's drug-trafficking mentor.  During that call, Bond warned Majeed that there were police in his neighborhood.  (Id. at 339 Log 1816.)

Accordingly, we conclude that the original warrant number 32-23 (2006) and each of the three subsequent extensions of that warrant met the requirements of Title III.

20.    Warrant 32-26 (2006), August 29, 2006 - Johnson

Warrant 32-26 (2006) was approved on August 29, 2006.  It authorized the interception of Johnson's telephone number 610-202-6910.

The affidavit for Warrant 32-26 makes mention of the allegedly suppressible Warrant 32-3.  The Government asserts that the supporting affidavit makes three mentions of Warrant 32-2 and/or Warrant 32-3.  The affidavit first mentions that Majeed stopped using the telephone number 267-918-9515, which was the number targeted in Warrant 32-2.  (Aff. 294)  The affidavit then referenced 32-2 and 32-3 when indicating that the speaker on a given call was Majeed.  (Id. at 211 Log 279; 259 Log 1296.)  However, we find that even if we were to exclude

from consideration the portions of the affidavit that make reference to those warrants, the affidavit would still contain ample evidence to support a finding of probable cause.

The affidavit shows that, on at least two occasions at the time the affidavit was filed, Johnson had used the targeted telephone number to speak with Kaplan, who the affiants know to be one of Johnson's suppliers of cocaine.  On August 17, 2006, Kaplan contacted Johnson by calling the targeted telephone number and then asked Johnson to put Barksdale on the line.  (Aff. 590 Log 144.)  The affidavit also shows that, on August 26, 2006, Johnson again called Kaplan using the targeted number.  (Id. at 591 Log 481.)  The affidavit also shows that, as of late August, Johnson was still involved in cocaine trafficking and was using cellular telephones to facilitate those activities. For example, on August 24, 2006, Johnson spoke with Malik Sullivan at length about his ability to obtain cocaine and the nature of his sources.  (Id. at 581-83 Log. 2048.)  On August 26, 2009, Johnson spoke via telephone with an individual named Anthony Collins to ask for his help in cooking cocaine.  (Id. at 588 Log 2087.)  Also, on August 25, 2006, Johnson spoke with Collins who requested a small amount of cocaine.  (Id. at 586 Log 2072.) We find that the evidence provided in the affidavit, even excluding any section referencing 32-3, provides ample evidence that Johnson was involved in drug trafficking, that he was using the targeted number to contact Kaplan, and that trafficking-related calls would therefore likely be obtained through electronic surveillance of that number.  The affidavit also establishes sufficient facts to show that the wiretap was necessary.  (Aff. 594-98.)  Accordingly, we find that the warrant application is not affected by any potential problems with Warrant 32-3 and met the requirements of Title III.

Warrant 32-26 was extended once on September 27, 2006.  In addition to the evidence

contained in the original application, the extension also included conversations obtained since the issuance of the original warrant.  The affidavit shows that, on September 13, 2006, Johnson spoke with Barksdale on the targeted number.  During that conversation Barksdale inquired about Johnson's cocaine sources.  (Aff. 599 Log 108.)  It also shows that, on September 22, 2006, he again spoke to Barksdale regarding the fact that he was not obtaining cocaine from Kaplan at that time because he wants to be able to pay him in full and not get cocaine on credit. (Id. 605 Log 145.)  We find that the warrant extension was properly issued.

21.    Warrant 32-28 (2006), September 27, 2006 - Johnson

Warrant 32-28 (2006) was approved on September 27, 2006.  It authorized the interception of Johnson's telephone number 267-237-6678.

Warrant 32-28 makes some mention of the allegedly suppressible Warrant 32-3.  The Government asserts that the supporting affidavit makes three mentions of Warrant 32-2 and/or Warrant 32-3.  The references are exactly the same as the references made in the warrant application for Warrant 32-26 above.  As in the case of Warrant 32-26, we find that the affidavit supporting the application for Warrant 32-28 contains ample evidence to support probable case even if we exclude from considerations any of the sections referencing 32-3.

The affidavit shows that, on September 7, 2006, Johnson utilized the targeted number to call Majeed and to arrange a possible meeting with him.  (Aff.  646 Log 595.)  This conversation signals that, as of that date, Johnson was using the targeted number to contact an important member of the trafficking organization.  It therefore supports the inference that evidentiary calls will be intercepted on that number.  The affidavit also shows that, as of mid-September 2006, Johnson had continued to conduct cocaine trafficking activities and continued to use cellular

telephones to facilitate those activities.  For example, on September 15, 2006, Johnson spoke with Sullivan about the fact that he was running low on cocaine supplies.  (Id. at 632 Log 2412.)  On September 18, 2006, Johnson spoke with Sullivan about trying to build up his funds in order to obtain more cocaine for sale.  (Id. at 637 Log 2516.)  On September 23, 2006, Johnson spoke with Joe Dukes and Dukes ordered an ounce of cocaine from him.  (Id. at 641-42 Log 2575.)  We find that the affidavit provides sufficient evidence to support a finding of probable cause to issue the warrant.  In addition, the affidavit sufficiently established that the wiretap was necessary.  (Aff. 650-53.)  Therefore, the affidavit met all the requirements of Title III.

Warrant 23-28 was renewed once on October 26, 2006.  The affidavit for the renewal application included several calls captured on the targeted number.  On September 29, 2006, Johnson received a call from an unidentified male who requested cocaine from Johnson.  (Aff. 648-49 Log 37.)  On October 12, 2006, Johnson again received a call from a customer ordering cocaine.  (Id. at 657-58 Log 134.)  On October 22, 2006, Johnson received a similar call from a customer requesting cocaine.  (Id. at 665 Log 961.)  We find that the affidavit for the renewal application contained sufficient evidence for the issuing court to conclude that Johnson has continued to use the targeted number to conduct trafficking activities.

22.    Warrant 32-29 (2006), September 27, 2006 - Kaplan

Warrant 32-29 (2006) was authorized on September 27, 2006, for the interception of Kaplan's telephone number 215-906-0305.  The affidavit provides sufficient information to support a finding of necessity.  (Aff. 408-12.)  In addition, the affidavit contains sufficient information to support a finding of probable cause.  The affidavit contains information from CI-6 regarding Kaplan's drug-trafficking activities as discussed in our analysis of Warrant 32-10

47

(2006) above.  In addition, the affidavit shows that Kaplan utilized the targeted number on

various occasions to communicate with Johnson.  (Aff. 402 Log 438; 402 Log 455; 403 Log 457;

403 Log 471; 404 Log 588.)  The affiants stated that, during a couple of these conversations,

Johnson was arranging a meeting with Kaplan to discuss or conduct a cocaine transaction.  (Aff.

403 Log 471; 404 Log 588.)  We find that the affidavit contained sufficient evidence to meet the

requirements of Title III.

       23.     Warrant 32-30, November 1, 2006 - Johnson's Vehicle

      Warrant 32-30 was authorized on November 1, 2006, for the electronic surveillance of a

Ford Taurus vehicle that one of the Government's confidential informants, Confidential

Informant 7 ("CI-7"), was scheduled to loan to Johnson at the request of the Government on

November 1, 2006.  The affidavit established the predicate of necessity.  (Aff. 694-700.)  The

affidavit also shows that, as of late October 2006, Johnson continued to engage in trafficking

activities.  (See, e.g., Aff. 681 Log 3456; 677 Log 525.)  The affidavit states that CI-7 informed

the affiants that Johnson told CI-7 that he was getting cocaine directly from Kaplan at that time.[13]

(Id. at 690.)  Johnson also told CI-7 on October 27, 2006 that Kaplan had instructed him to

increase the rate at which he was selling cocaine.  (Id. at 691.)  The affidavit shows that, on

October 28, 2006, CI-7 asked Johnson to obtain cocaine from Kaplan for him and Johnson told

him that he had "the green light," which the affiants interpreted to mean that he was able to

obtain cocaine from Kaplan at that time.  (Id. at 684 Log 3546.)  The affidavit also shows that,

on October 31, 2006 CI-7 arranged to switch cars with Johnson on November 1, 2006, and allow

---

     [13]     The affidavit states that CI-7 has proved to be reliable in the past and has
provided the authorities with information regarding other drug traffickers that they have then
independently verified and found to be true.  (Aff. 689-90.)

Johnson to borrow the Ford Taurus that was the subject of the warrant.  (Id. at 686 Logs 3646, 3652.)  The affidavit also states that CI-7 agreed to ask Johnson to meet with Kaplan on November 1, 2006 to obtain cocaine on behalf of CI-7.  (Id. at 687.)  The affidavit further states that the Taurus vehicle would be outfitted with audio and video equipment so that, if Johnson indeed utilized the vehicle to meet with Kaplan, the affiants would be able to obtain footage and sound recordings related to that meeting.  We find that the affidavit provides sufficient facts to support a finding of probable cause.

24.     Warrant 32-31 (2006), November 14, 2006 - Kia Sportage

Warrant 32-31 authorized the interception of conversations obtained from a Kia Sportage car that Majeed operated for a period of time.  The interception began on November 14, 2006 and concluded on December 13, 2006.

The affidavit for Warrant 32-21 makes mention of the allegedly suppressible Warrant 32-3.  The Government argues that, although the supporting affidavit for 32-31 states that conversations obtained on the telephone number 267-304-5325 from August 2006 to November 2006 were obtained from Warrant 32-3 (the allegedly suppressible warrant), those conversations were actually obtained from Warrant 32-23.  It is clear from the affidavit that the relevant calls could not have been obtained from the questionable extensions, 32-3 Extensions 2 or 3, because the last date of authorization for those extensions was June 3, 2006, thirty-days after the May 3, 2006, authorization of Extension 3.  The only warrant authorizing interception of 267-304-5325 during those dates was Warrant 32-23, which, as we have found above, was validly issued.  Accordingly, we find that the calls in question were not obtained from the questionable extensions and can therefore support a finding of probable cause.

The affidavit includes all the information obtained from confidential informants regarding Majeed's drug-trafficking activities.  The affidavit also shows that, in the months preceding the issuance of the warrant, Majeed continued to have trafficking-related conversations with his suspected co-conspirators.  (See, e.g., Aff. 284-85 Log 495; 322 Log 1082; 328-29 Log 1525.)

In addition, the affidavit supports the inference that pertinent calls would likely be obtained from the electronic surveillance of the vehicle.  First, on the day after Majeed took possession of the Kia, the Kia was seen parked at Cauthorn's residence, where Cauthorn's Black Dodge Ram truck was also parked.  (Aff. 348.)  On that same day, surveillance detected Barksdale operating the Kia with Majeed and Johnson as passengers.  (Id. at 347-48.)  These facts lend credence to the inference that Majeed was and would continue to utilize the Kia during meetings with his suspected trafficking co-conspirators.  In addition, the affidavit shows that other members of the organizations conduct drug transactions inside their vehicles for privacy.  (Aff. 88-89.)  The affidavit also mentions that, over the course of the investigation, Majeed's telephone conversations had recently become more circumspect and he had become more "law enforcement sensitive."  (Aff. 354)  All of these facts support the inference that electronic surveillance of the car would yield private conversations among the organizations' members and that such surveillance may be more fruitful that sole reliance on intercepted telephone calls.  Accordingly, we find that the affidavit contains sufficient facts from which the issuing judge could reasonably conclude that pertinent trafficking-related conversations would be obtained by placing recording devices inside the vehicle.

Defendant Gandy asserts that Warrant 32-31 fails to meet the necessity requirement due

to a material omission.  In his Motion to Suppress Electronic Interceptions from Concealed

Microphones Installed in the Silver Kia Sportage, Gandy states:

> Troopers eliminated from the affidavit the salient fact that Richard
> Pierce had been cooperating with the state police since March 15,
> 2006. . . .Had this been included in the affidavit, Justice McCaffery
> would have been hard pressed to find that normal investigative
> procedures with respect to the offense were tried and failed or
> reasonably appeared to have been unlikely to succeed if tried or were
> too dangerous to employ.

(Gandy Mot. to Suppress at 17-18.)  Although the Kia affidavit does not expressly mention that

Richard Pierce was a collaborator at the time of the application, the affidavit does include several

statements that make that fact clear.  For example, the affidavit states that Pierce placed two

telephone calls to Majeed "at the direction of [the] affiants."  (Aff. 256 Log 90; 258 Log 817.)

This clearly shows that Pierce was cooperating with the affiants and acting pursuant to their

direction at least as early as April 18, 2006, the date of the first orchestrated call.  (Aff. 256 Log

90.)  Therefore we find that, contrary to Gandy's assertion, the troopers did not "eliminate from

the affidavit" the fact that Pierce had become a cooperator by the time of the application.

However, even if the fact had indeed been fully omitted, suppression would not be

required.  As established in Franks v. Delaware, 438 U.S. 154 (1978), "we grant a defendant's

motion to suppress evidence if he can demonstrate: (1) that the police recklessly omitted

information from a warrant affidavit, and (2) that the determination of probable cause hinged on

the omitted material."  United States v. Sanchez, 246 Fed. Appx. 803, 805 (3d Cir. 2007).

Therefore, even assuming that the affidavit did omit the fact that Pierce was cooperating at the

time the application was filed, this omission would only warrant exclusion of the obtained

evidence if it were a material omission.  Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000).  "To

determine the materiality of the misstatements and omissions, we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Id.  Here, we find that such omission would not have been material.  First, it is clear from the intercepted conversations included in the affidavit that Pierce was not a trusted member of Majeed's inner circle.  In fact, in various conversations Majeed signals that he was unhappy with Pierce because Pierce owed him money.  (Aff. 306-07 Log 577; 323 Log 1140.)  In addition, there is no indication from the conversations between Pierce and other members of the organization that Pierce is close enough with Majeed that Majeed would trust him with any information about the organizations operations.  Finally, while Pierce was at one point in touch with Kaplan, one of the groups' suspected suppliers, the affidavit mentions that Pierce, who is referred to at CI-6,[14] "is no longer in a position to purchase cocaine for Kaplan [or] to introduce anyone to Kaplan."  (Id. at 359.) Therefore, the fact that Pierce was collaborating with the government at the time of the application does not at all mean that using him as a confidential informant would be sufficient to investigate the organizations operations, suppliers, network, etc.  Accordingly, under a Franks analysis, the inclusion of the fact that Pierce was a cooperator would not have negated a showing of necessity.  In addition, the affidavit includes a thorough factual predicate to otherwise establish necessity for the warrant.  (Aff. 358-64.)  Accordingly, we find that the affidavit meets Title III's necessity requirement.

 We find that the affidavit provides sufficient probable cause that: (1) Majeed is involved

---

[14] During a motions hearing conducted on February 19, 2009, the Government explained that Richard Pierce became a cooperator in March 2006 and that he was referred to in the subsequent affidavits as CI-6.

in drug-trafficking; (2) a wiretap on the car is likely to yield conversations between Majeed and

his confederates regarding their drug-trafficking business; and (3) that the Kia is going to be

commonly used by Majeed to meet with his confederates.  Therefore, we find that the affidavit

satisfies the requirements of Title III.

IV.     CONCLUSION

        For the reasons stated above, we will deny Defendants' Motions to Suppress.  An

appropriate Order follows.